Argued 9 October, decided 21 November, 1906.

## STATE *v.* BRANTON.

### 87 Pac. 535.

INDICTMENT—DUPLICITY—DIFFERENT DEGREES—INTENT.

1. Since a greater offense always includes a lesser one of the same class, and as the intent with which a deadly weapon is used determines the grade of the offense committed, one may be convicted of an assault with a deadly weapon under a charge of an assault with intent to kill, the latter being an inferior grade of the former, and therefore an error in charging both crimes in one indictment is harmless.

CRIMINAL LAW—STANDARDS OF COMPARISON—HANDWRITING.

2. Under Section 777, B. & C. Comp., providing that evidence respecting handwriting may be given by a comparison by a skilled witness, or the jury, "with writings admitted or treated as genuine by the party against whom the evidence is offered," only writings admitted and treated as having been written by defendant personally can be used as a basis of comparison against one accused of crime.

CUMULATIVE EVIDENCE OF HANDWRITING—HARMLESS ERROR.

3. In a prosecution for assault with intent to kill, a poorly spelled letter, purporting to have been written by defendant and relating to his prospective marriage, was admitted in evidence after testimony by the recipient that she discussed its contents with defendant after she had received it. No expert based his opinion as to the genuineness of another incriminating letter purporting to have been signed by defendant, on a comparison with the first letter, and the attention of the jury, who had before them numerous genuine samples of defendant's handwriting, was not particularly called to such letter. *Held,* that, even if defendant's acknowledgment of the contents of the letter was not a sufficient admission of the genuineness of the penmanship to permit its use as a standard of comparison by an expert, yet its admission before the jury could have caused no appreciable injury to defendant.

FORMAL REQUISITES OF CRIMINAL JUDGMENT.

4. An order in a criminal case concluding, "It is therefore ordered that * * be confined in the penitentiary," etc., is a sufficient judgment. In this connection the word "considered" is frequently used, but it is not necessary.

From Lane: JAMES W. HAMILTON, Judge.

John Branton appeals from a conviction of an assault with intent to kill one John Fletcher.                    AFFIRMED.

For appellant there was a brief over the names of *Johnson & Medley* and *Lark Bilyeu*, with oral arguments by *Mr. Bilyeu* and *Mr. J. C. Johnson*.

For the State there was a brief over the names of *A. M. Crawford*, Attorney General, *George M. Brown*, District Attorney, and *John Monroe Williams*, with oral arguments by *Mr. Brown* and *Mr. Williams*.

MR. JUSTICE MOORE delivered the opinion.

The defendant, John Branton, was accused by an information of the crime of assault with intent to kill, alleged to have been committed as follows:

"The said John Branton on the 9th day of March, A. D. 1905, in the said County of Lane and State of Oregon then and there being, did then and there with a certain revolver gun, loaded with gunpowder and leaden bullets and capable of being discharged, unlawfully and feloniously assault John Fletcher with the aforesaid gun by feloniously shooting and wounding him, the said John Fletcher, with said revolver gun, with intent him, the said John Fletcher, to kill and murder, contrary to the statute in such case made and provided, and against the peace and dignity of the State of Oregon."

A demurrer to the information, on the ground that it attempted to charge the commission of more than one crime, was overruled, and, the cause being tried, the defendant was found guilty as charged, and appeals from the judgment which followed.

1. It is contended by his counsel that he was charged with the commission of the crime of assault being armed with a deadly weapon, and also with an assault with intent to kill, and that,

having challenged the information for duplicity, an error was committed in overruling the demurrer. The organic law declares that in all criminal prosecutions the accused shall have the right to demand the nature and cause of the accusation against him: Const. Or. Art. I, § 11. Statutes passed in pursuance of this fundamental requirement provide, in effect, that an information, which may take the place of an indictment (B. & C. Comp. § 1259), must be direct and certain as it regards the crime charged and the particular circumstances thereof when they are necessary to constitute a complete offense (B. & C. Comp. § 1306), and the information must charge but one crime and in one form only: B. & C. Comp. § 1308. When a formal criminal charge violates these provisions, and its compound aspect is pointed out by a demurrer, the challenge thus interposed should be sustained: *State* v. *Lee,* 33 Or. 506 (56 Pac. 415). The statute which the defendant is accused of violating contains the following provision:

"If any person shall assault another with intent to kill, * * such person, upon conviction thereof, shall be punished," etc.: B. & C. Comp. § 1767.

A kindred enactment is as follows:

"If any person, being armed with a dangerous weapon, shall assault another with such weapon, such person, upon conviction thereof, shall be punished," etc.: B. & C. Comp. § 1771.

It may be supposed that a person might intentionally attempt by violence to do another a bodily injury with a deadly weapon, without an intent to take the life of the person so assaulted. So, too, it can readily be seen that a person might assault another with a destructive instrument with intent to take the life of the latter. The design with which a deadly weapon is used in making an assault determines the grade of the offense, and, when a purpose to take the life of another accompanies the overt act, it augments the crime to an assault with intent to kill. A specification of such charge may, therefore, include the accusation of an assault with a deadly weapon: 1 Bishop, New Crim. Law, § 780, subd. 3; 1 McClain, Crim.

Law, §§ 271, 272. Upon an accusation of the commission of a crime, consisting of different degrees, the accused may be found not guilty as charged and convicted of any degree inferior thereto (B. & C. Comp. § 1417) ; and when it appears that the defendant has committed a crime, and there is reasonable ground of doubt in which of two or more degrees he is guilty, he may be convicted of the lowest of these degrees only: B. & C. Comp. § 1394. The defendant, having been accused of the commission of an assault with intent to kill, could have been found guilty of an assault with a deadly weapon, which is a lesser offense, and as the crime with which he was charged consists of degrees, wherein the greater necessarily includes the less, he could not have been prejudiced by accusing him with the commission of the lesser offense also, if it be assumed that the information contains such a specification: *State* v. *McLennen,* 16 Or. 59 (16 Pac. 879) ; *State* v. *Lavery,* 35 Or. 402 (58 Pac. 107) ; *State* v. *Kelly,* 41 Or. 20 (68 Pac. 1).

2. It is maintained by defendant's counsel that the court erred in admitting, over objection and exception, certain immaterial manuscript, claimed by the prosecuting attorney to have been written by the defendant, without proof of such writings having been admitted or treated by him as genuine. The documents so received were introduced in evidence to establish a standard of comparison with the defendant's handwriting for the purpose of proving that he inscribed a letter that came by mail, addressed to the specified officer of the town where it purports to have been written, of which the following is a copy:

"Cottage Grove Or Mch 8 95
Marshel i leave this note to show that i have took my life and you will find me on the road between town and branton ranch i am tired living and leave this to save troubel for my friends and expence to the county.
good Bye.
J. Fletcher."

As tending to incriminate the defendant, a fellow prisoner, who was confined with him in the Lane County jail, appearing as a witness for the state, testified that the defendant, referring

to Fletcher, the prosecuting witness, said, "I am sorry I left the s—— of a b—— without finishing him"; that the defendant offered to pay the fine imposed upon the witness if the latter would persuade Fletcher to accompany him to Astoria, where he was to be shanghaied or disposed of in some manner by persons whose names were stated; that the witness saw the defendant write a letter, which was given to him to be mailed when he had fully executed the commission, which letter is addressed to the then deputy district attorney, and, having been offered in evidence, over objection and exception, the following is a copy thereof, to wit: .

"Astoria, June, 1905.

Eugene.

Mr. J. W. Williams as i am the gilty one in the Branton case i cant fase him in it so i ask you have him turned loose

J fletcher."

Mrs. Della M. Wetzel, a sister-in-law of the defendant, testified that she had corresponded with him, and, referring to letters purporting to have been written by him to her, January 24, 1892, and September 3, 1901, she stated that he told her he wrote them; that after she received a similar letter, dated June 28, 1903, she discussed with him the subject-matter and contents thereof; and that, alluding to a like letter of December 20, 1901, he inquired of her if she had told her father what he wrote her therein. These letters, over objection and exception, were received in evidence for the sole purpose of proving the basis of a comparison of handwriting, and are numbered, respectively, Exhibits 1, 2, 4 and 5. D. Linebaugh testified that the defendant, in his presence, subscribed his name to a note which stipulated for the payment to him of a sum of money, which written promise, over objection and exception, was received in evidence and numbered Exhibit 6. Several witnesses were thereupon called by the state, each of whom, having testified as to his qualifications, severally expressed, over objection and exception, an opinion that the letters, copies of which are hereinbefore set out, when compared with Exhibits 1, 5 and 6, were written by the defendant.

It is argued by defendant's counsel that no manuscript is competent as a basis of comparison of penmanship, by placing it in juxtaposition with other material writings, unless such document has been admitted or treated by the party against whom it is offered as genuine, is relevant to the issue to be tried, and has been received in evidence for some other purpose; that the exhibits mentioned did not tend to establish or disprove the defendant's guilt or innocence, and hence they were immaterial, and their introduction in evidence prejudicial. The question thus presented is whether or not writings which have been proven to be genuine are admissible in evidence for the sole purpose of providing a foundation for the comparison of handwriting. The statute, regulating the manner of proving the style of penmanship is as follows:

"The handwriting of a person may be shown, by any one who believes it to be his, and who has seen him write, or has seen writing purporting to have been his, upon which he has acted or been charged, and who has thus acquired a knowledge of his handwriting": B. & C. Comp. § 776.

"Evidence respecting the handwriting may also be given by a comparison, made by a witness skilled in such matters, or the jury, with writings admitted or treated as genuine by the party against whom the evidence is offered": B. & C. Comp. § 777.

In *Munkers* v. *Farmers' Ins. Co.* 30 Or. 211 (46 Pac. 850), Mr. Justice BEAN, speaking for the court in construing the section last quoted, settles the question raised by saying: "Under this statute it is clear that any writing which is admitted to be or treated as genuine by the party against whom the evidence is offered may be used for the purpose of comparison with the writing or signature in question, although it may not be admissible in evidence for any other purpose." See, also, 15 Am. & Eng. Enc. Law (2 ed.), 267, note 3. In *Holmes* v. *Goldsmith,* 147 U. S. 150 (13 Sup. Ct. 288: 37 L. Ed. 118), in interpreting the section of the statute last referred to, it was held that, when the genuineness of a paper sued on is put in issue, papers not otherwise competent may be introduced in Oregon for the purpose of enabling the jury to make a comparison of handwriting,

the court saying: "We regard the statute as constituting the law of the case, and as warranting the action of the court in the particulars complained of."

It was argued at the trial herein that a party against whom writings may be offered in evidence could have admitted or treated them as genuine without ever having written them himself, and as such manuscripts are received as a basis of comparison of penmanship, he might be convicted upon the authorized writing of a person who theretofore had been his clerk, and, this being so, the rule adopted in the cases referred to should not be applicable in the trial of criminal actions, and that the testimony of a witness that she discussed with the defendant the contents of a letter purporting to have been written by him to her is not sufficient evidence in a case of this kind that he wrote the letter, and hence the basis for the comparison necessarily fails, and the error in admitting such letter becomes manifest. The sections of the statute hereinbefore quoted relate to the same subject-matter and should be construed together. Considering these clauses in that manner, it is the genuine handwriting of the person against whom the evidence is offered, that has been admitted or treated by him as such, that must be taken to form the basis of comparison of penmanship, and not such documents as might be valid and binding on him, though written and signed by another at his request. The bill of exceptions discloses that Exhibits numbered 1, 2 and 5 were severally admitted and treated by the defendant as having been written by him, and that he subscribed his name to Exhibit No. 6. Exhibit No. 4 is as follows:

"Cottage Grove Or. June 28th—1903.
Dear Sister and family and all the rest of the folks.
We are all well except Roy he has the measels I hope you are all well I got my hay in the barn before the rain that is all I had cut it is raining now I have about 12 acres reasy to cut now Well I will tell you about me going to get married I shall marry on the evening of the 9 of July at ( OClock I will let you no in time so you can make calculation on the 4 if you want to go You peopel can come up to me place and go to town in the evening or if you want to just come to Mrs Dowens and then

come on the next day  We dont expect to have very many at
our weding  Come if you can rite and let me no if you are
coming.  Well I will close

Yours as ever

John T. Branton.

Send Mancey and nell Word."

It will be remembered that Mrs. Wetzel testified that after
receiving this letter she discussed with the defendant the sub-
ject-matter and the contents thereof.  She also testified that she
had frequently seen him write and recognized his penmanship.

3. In *Manning* v. *State,* 37 Tex. Cr. R. 180 (39 S. W. 118), a
witness testified that, though he had never seen the prosecuting
witness write, he had received many letters from her, had talked
with her about the contents thereof, and she admitted to him
that she had written a letter to him.  It was held that a letter
exhibited to him was one received by mail from her, and the
testimony was sufficient to identify the letter as a specimen of
her handwriting, to be used for comparison with other letters
claimed to have been written by her.  It may well be doubted
whether the rule thus announced would be applicable under a
statute like, ours, for a party might be able to repeat from
memory the contents of letters or other documents which had
been written at his dictation and signed by another person at his
request, the penmanship of which would not afford a safe guide
for comparison.  To hold that an instrument written and signed
under the circumstances assumed constituted a sample of chirog-
raphy sufficient to determine therefrom the similitude of hand-
writing of another document might result in convicting the
purported author of the first letter of forgery or of a similar
crime that had been committed by his amanuensis in writing the
second.  The genuineness of papers must be clearly shown before
a person can be permitted to testify to the handwriting of an-
other (15 Am. & Eng. Enc. Law, 2 ed. 272), and there is now
no distinction in this respect between civil and criminal causes
(Idem, 253), unless otherwise specially provided by statute:
B. & C. Comp. § 1399.  The genuineness of handwriting was
originally limited to the testimony of a witness who saw the

instrument executed, and his declaration in this respect was applicable only in civil actions: 3 Wigmore, Evidence, § 1991. An express admission of the genuineness of a writing by the purported author thereof renders it admissible in evidence as a basis for comparison of penmanship: B. & C. Comp. § 776. So, too, his treatment of the instrument as genuine, which is an implied admission to that effect, is equally competent: 1 Wigmore, Evidence, § 701; 3 Wigmore, Evidence, § 1993. Whether or not the defendant's acknowledgment of the contents of the letter announcing his intended marriage is such a treatment of the writing as to render it equivalent to an implied admission of the genuineness of his penmanship, we do not think it necessary to inquire; for it will be remembered that no comparison therewith was made by the expert witnesses. The letter having been offered in evidence, the jury, it is true, were authorized to make a comparison therewith (B. & C. Comp. § 777); but, their attention not having been directed thereto, we think, in view of the fact that so many genuine samples of the defendant's handwriting were received in evidence, that the admission of such letter caused no appreciable injury to his rights.

4. It is contended by defendant's counsel that no final judgment was rendered in this action. The transcript details the proceedings of the trial, sets out a copy of the verdict, states that the motion for a new trial was denied, declares that the defendant was unable to show any valid reason why sentence of the court should not then be pronounced, and concludes as follows:

"It is therefore ordered that the said defendant John Branton be confined in the penitentiary of the State of Oregon for the term of ten years, and that he pay the costs of this prosecution."

The word "considered," when used by a court to express the final conclusion reached on the trial of an issue, or on the admission or confession of a party, has been deemed appropriate; but other words have been held equivalent thereto: 1 Freeman, Judgments (4 ed.), § 46. This, when in a criminal action which condemns the prisoner to be punished and sets forth par-

ticularly the amount, duration and place of punishment, is a final judgment: 1 Freeman, Judgments. (4 ed.), § 21a.

No prejudicial error having been committed, and the judgment being sufficient, it is affirmed.    AFFIRMED.