Argued January 19, affirmed March 9, petition for rehearing
denied April 5, petition for review denied
June 13, 1972

STATE OF OREGON, *Respondent, v.* LEROY
ALLEN McCAULEY, *Appellant.*

494 P2d 438

*Darryl E. Johnson* and *William L. Lasswell,* Roseburg, argued the cause and filed the brief for appellant.

*Doyle L. Schiffman,* District Attorney, Roseburg, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

Defendant was charged in a single indictment with one count of second degree murder (ORS 163.-020), and, "as a part of the same act and transaction," one count of manslaughter (ORS 163.040). He was found guilty by a jury of the crime of manslaughter and sentenced to imprisonment for an indeterminate period not to exceed six years. The defendant appeals asserting eight assignments of error.

On September 15, 1970, the defendant stabbed his wife, LouAnn McCauley, at the home of the victim's grandmother. Mrs. McCauley was taken to the Myrtle Creek Hospital for treatment, where she died on September 23, 1970, after she developed an infection caused by her wounds.

The events leading up to the stabbing of the decedent are not seriously in dispute and need not be set forth in detail here. The evidence establishes that the defendant and his wife had had marital difficulties culminating in the institution of divorce proceedings by the defendant and his gaining temporary custody of the couple's two minor children. During the sep-

aration the defendant became nervous and highly agitated, due apparently in part to his discovery for the first time that his wife had been dating other men during their marriage. There was contradictory expert testimony presented by both parties regarding defendant's ability, at the time of the stabbing, to distinguish right from wrong. His defense of insanity was rejected by the jury.

As his first assignment of error, defendant asserts that the trial court erred in overruling his demurrer to the indictment. Count I of the indictment states that on or about September 15, 1970, the defendant

"* * * did then and there unlawfully, feloniously, purposely and maliciously strike, stab and wound one LouAnn McCauley about the stomach and chest with a knife, to-wit: a pocket knife with a three-inch blade, thereby causing her death on or about September 23, 1970; said death of LouAnn McCauley was a proximate result of the aforementioned striking, stabbing and wounding, contrary to the statutes in such cases made and provided, and against the peace and dignity of the State of Oregon."

Count II states:

"And as a part of the same act and transaction set out in Count I herein, the said LeROY ALLEN McCAULEY, on or about the 15th day of September, 1970, in said County of Douglas and State of Oregon, did then and there unlawfully and feloniously do an act, to-wit: strike, stab and wound one LouAnn McCauley about the stomach and chest with a knife, to-wit: a pocket knife with a three-inch blade, and as a result thereof, LouAnn McCauley, a human being, died on or about September 23, 1970 * * *."

Although he concedes that the first count of the indictment charges second degree murder (ORS 163.020), the defendant argues that the indictment is defective because

"* * * more than one crime is charged in the indictment.

"* * * * *

"It is specifically submitted that the defendant cannot be guilty of second-degree murder and also as a part of the same act and transaction manslaughter upon the same victim [ORS 132.560, 135.630 (3)]."

■■ Manslaughter, both voluntary and involuntary, is a lesser included offense of second degree murder. *State v. Thomas,* 240 Or 181, 183-85, 400 P2d 549 (1965); *State v. Wilson,* 182 Or 681, 684, 189 P2d 403 (1948); *State v. Nortin,* 170 Or 296, 299, 133 P2d 252 (1943). Upon an indictment charging a homicide, the defendant may, as happened here, be found guilty of the particular offense alleged or of any lesser included offense. *State v. Thomas,* supra; ORS 136.660. It was "unnecessary verbiage" to include in the instant indictment charging second degree murder the lesser included offense of manslaughter. *State v. Gibbons,* 228 Or 238, 241-42, 364 P2d 611 (1961).

ORS 132.590 provides:

"No indictment is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in a matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

There was here no showing of prejudice to the "substantial rights of the defendant upon the merits" and it follows that at most it was harmless error for the

trial court to overrule defendant's demurrer. *State v. Thomas,* supra; *State v. Standard,* 232 Or 333, 338-39, 375 P2d 551 (1962); *State v. Jackson,* 224 Or 337, 354-55, 356 P2d 495 (1960); *State v. Branton,* 49 Or 86, 89, 87 P 535 (1906).

■ Defendant's second assignment of error asserts that the trial court erred in denying his motion to require the state to elect upon which count it intended to proceed. It follows from the above that the court correctly submitted both second degree murder and manslaughter to the jury. The assignment is without merit.

■ Defendant's third assignment of error asserts that the trial court erred in instructing the jury on voluntary manslaughter. This contention is premised upon defendant's assumption that Count II of the indictment, if it charges any crime, charges involuntary manslaughter. He argues that it was therefore "confusing and prejudicial error for the Court to allow Count II in the indictment to go to the jury while instructing on voluntary manslaughter." We disagree.

Count I of the indictment charges second degree murder. Count II of the indictment, whether viewed as charging voluntary or involuntary manslaughter, is "unnecessary verbiage." *State v. Gibbons,* supra. We have already held that it was not prejudicial to the substantial rights of the defendant to submit the included offense to the jury. In its instructions to the jury, the court said:

"Now, you recall this indictment alleges two counts, murder in the second degree and manslaughter. For your purposes in this case you need not concern yourself with the fact that there are two counts in this indictment. Had there been only the first count, you would still have been in-

structed on murder in the second degree and manslaughter and you need not during your deliberations in this case concern yourself that there are two counts. The fact that there are two counts in there does not mean that the defendant can be found guilty of both; he cannot. * * *"

The court then properly instructed the jury on those elements constituting second degree murder and voluntary manslaughter.

■ In his fourth assignment of error, the defendant contends that the trial court erred in refusing to sustain his objection to particular questions asked by the state on direct examination of a police officer. The officer testified that upon taking the defendant into custody after the death of Mrs. McCauley, he informed him of his constitutional rights. The defendant at first stated that his attorney had advised him to remain silent. Subsequently, however, not in response to any questioning, the defendant voluntarily stated that he was sorry for stabbing his wife. Defendant does not contend that it was error to permit the officer to testify concerning the content of defendant's spontaneous remarks. Rather, he contends that the testimony regarding his desire to remain silent was a "direct and prejudicial invasion of his right against self-incrimination." We disagree. The defendant, after being advised fully of his rights, nevertheless volunteered certain statements, the admissibility of which defendant does not challenge. He asserted the defense of insanity. His remarks to the officer were made shortly after his wife had died and were relevant to show his understanding and comprehension of what took place at the time of the stabbing. The circumstances surrounding his making those voluntary remarks were also relevant to that issue.

Defendant's fifth assignment of error asserts that the trial court erred in sustaining plaintiff's objection to defendant's Exhibits 4 and 5. Both exhibits are letters written by the defendant's wife to a friend. One was written eight days and the second three days prior to the stabbing. Neither the content nor even the existence of either of these letters was known to defendant prior to his commission of the act charged. Defendant conceded during trial that these exhibits were hearsay, but argues that they fall within the state of mind exception to the hearsay rule. Defendant sought to introduce only the following portions of each letter. From the letter of September 7, 1970:

"Well, I am getting a Divorce, Lee's got the kids. Went out to see them last night and he threw me out of the house. It's only the 10th time. Can't talk to them unless his nose is right there. Tell you about that when I see yea.

"* * * He's sure a Bastard, got to go to the Lawyer after while, see about visitation rights with the kids. It just burns asshole up because I haven't left town. He doesn't even want me to go into a Bar, store or anything because someone might see me. He's crazy as a goon. You've just got to come down so I can tell you all about it you'll die laughing.

"* * * * *

"Lee, so worried about me getting P.G. it's about to kill him. Says I am to old for that you, no I'll be 30 the 18th. * * *"

From the letter of September 12, 1970:

"Send my letters in % Louise Jeppson. They put them in Lee's box and from now on he's going to throw them away."

Defendant contends additionally that because the defense of insanity was a major contention in the

case, his wife's statement, "He's crazy as a goon," was admissible for that purpose, and that the other portions offered were her statement of facts relevant to that opinion.

■ While opinion evidence concerning the sanity of a defendant may under appropriate circumstances be admissible, *State v. Garver*, 190 Or 291. 225 P2d 771, 27 ALR2d 105 (1950), it does not become an exception to the hearsay rule simply because the person who expressed that opinion is dead or otherwise unavailable. To so hold would deny the right of a party to cross-examine and to be faced by such a witness under oath. Nor does it become so when, as here. the fact of defendant's sanity is itself a major issue. Nor does the fact that it is the opinion of the victim, by itself alone, render it admissible.

■ Defendant contends that the proffered portions of the letters were admissible to show the state of mind of the wife-victim. He relies particularly on *State v. Shirley*, 7 Or App 166, 488 P2d 1401 (1971), Sup Ct *review denied* (1972), and the authorities cited therein. In *Shirley*, relying on *State v. Fong*, 211 Or 1, 314 P2d 243 (1957), and *State v. Farnam*, 82 Or 211, 161 P 417 (1916), we held that the statements of a victim, made either shortly before or substantially contemporaneously with the homicide, expressing his imminent fear of the defendant and the reasons therefor, including many then known to the defendant, upon which that fear was based were relevant to explain the conduct and state of mind of the victim in hiding from the defendant because it tended to show the motive of the defendant in seeking out and assaulting the victim.

■■ The state of mind exception applies to state-

ments or declarations of a presently existing mental state, attitude, feeling or emotion of the declarant. McCormick, Evidence 567-71, §§ 268-69 (1954); Rule 513, Model Code of Evidence, American Law Institute (1942); Oregon State Bar, Evidence in Oregon Civil Trials, § 9.12 (1967). Here, however, the defendant sought to introduce the letters as "her [the wife's] expression of his state of mind at that time [i.e., at the time of the writing of the letters]." The exception is thus inapplicable here, where it was offered to prove the state of mind of the defendant, not the declarant. The objections were therefore correctly sustained.

■ In his last assignment of error, defendant complains that the trial court erred in sustaining plaintiff's objection to defendant's Exhibits 11 and 12. Exhibit 11 reports the results of a psychological test known as the Minnesota Multiphasic Personality Inventory, which was given by Dr. Alan E. Scott to the defendant. Exhibit 12 is a letter from Dr. Scott to one of defendant's attorneys describing Dr. Scott's interpretation of defendant's performance not only on the psychological test but also the doctor's evaluation of defendant's history and personality characteristics, and his opinion concerning the ability of the defendant to distinguish between right and wrong when he stabbed his wife. Defendant did not call Dr. Scott as a witness. Instead he sought to introduce these exhibits through one of his witnesses, Dr. John L. Carter. The plaintiff's objection that both exhibits were hearsay was sustained by the court.

Furthermore, Dr. Carter, who had interviewed the defendant on two occasions after the stabbing incident, testified that he was not present when Dr. Scott earlier performed tests on the defendant, that he had

not interpreted the raw material of the tests, and had neither relied upon nor referred to Dr. Scott's earlier evaluation of the defendant before reaching his own independent conclusions. The objection to each exhibit was properly sustained.

The remaining assignments of error do not warrant discussion and are without merit.

Affirmed.