Argued and submitted December 20, 1991, conviction affirmed; remanded for resentencing June 10, reconsideration denied October 21, petition for review allowed November 24, 1992 (314 Or 727)

STATE OF OREGON,
*Respondent,*

*v.*

JASON LEON LARK,
*Appellant.*

(C89-12-37103; CA A67396)

833 P2d 1286

Frank L. Bearden, Judge pro tempore.

Steven V. Humber, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

De MUNIZ, J.

## De MUNIZ, J.

After a trial to the court on stipulated facts, defendant was convicted of burglary in the first degree. ORS 164.225. The indictment alleged that the offense "occurred in an occupied dwelling." Defendant stipulated that he and an accomplice had burglarized an occupied dwelling, but that he did not personally enter the dwelling. On appeal he challenges the classification of his conviction on the Crime Seriousness Scale under the sentencing guidelines. He argues that it was error to rank his conviction in category 8, instead of category 7, because that imposed an enhanced sentence on the basis of vicarious responsibility. We remand for resentencing.

Vicarious responsibility is authorized by ORS 161.150:[1]

"A person is guilty of a crime if it is committed by the person's own conduct or by the conduct of another for which the person is criminally liable, or both."

There is no comparable basis for vicarious enhancement of a penalty. *State v. Wedge*, 293 Or 598, 604, 652 P2d 773 (1982); *State v. Hicks*, 38 Or App 97, 589 P2d 1130 (1979); *see also State v. Thiesies*, 63 Or App 200, 662 P2d 797 (1983).

Under the sentencing guidelines, the crime seriousness of a conviction for burglary in the first degree is classified according to OAR 253-04-002, which provides, in part:

"(1)  The Crime Seriousness Scale consists of eleven categories of crimes. Each crime category represents crimes of relatively equal seriousness. * * *

---

[1] ORS 161.155 provides:

"A person is criminally liable for the conduct of another person constituting a crime if:

"(1)  The person is made criminally liable by the statute defining the crime; or

"(2)  With the intent to promote or facilitate the commission of the crime the person:

"(a)  Solicits or commands such other person to commit the crime; or

"(b)  Aids or abets or agrees or attempts to aid or abet such other person in planning or committing the crime; or

"(c)  Having a legal duty to prevent the commission of the crime, fails to make an effort the person is legally required to make."

"(2) When the *statutory definition of an offense includes a broad range of criminal conduct*, the offense may be subclassified factually in more than one crime category to capture the full range of criminal conduct covered by the statutory offense. The list of subclassified offenses is set forth as Appendix 3." (Emphasis supplied.)

Appendix 3 provides, in part:

"BURGLARY I (ORS 164.225)

### *"CRIME CATEGORY 9*

"Burglary I shall be ranked at Crime Category 9 if any of the following factors were included in the commission of the offense:

"a.)   the offender was armed with a deadly weapon; or

"b.)   the offender caused or threatened physical injury to the victim.

### *"CRIME CATEGORY 8*

"Burglary I shall be ranked at Crime Category 8 if

"a.)   the offender did not cause or threaten physical injury to the victim and did not possess a deadly weapon (CC 9); but

"b.)   the offense was committed in an occupied dwelling.

### *"CRIME CATEGORY 7*

"Burglary I shall be ranked at Crime Category 7 if it cannot be ranked at Crime Category 8 or 9."

■    Defendant argues that the subcategories only enhance punishment and that *State v. Wedge, supra*, and *State v. Hicks, supra*, prohibit the imposition of an enhanced punishment based solely on vicarious responsibility. The state contends that the *Hicks/Wedge* analogy must be rejected, because the statutes at issue in those cases were fundamentally different from the guidelines provisions. In *Hicks*, the statute mandated the imposition of an additional 10-year penalty if the defendant had committed a felony while armed with a concealable firearm. In *Wedge*, the statute mandated the imposition of a minimum term of imprisonment if a defendant had used or threatened to use a firearm during commission of a felony. The state contends that those statutes did not add new elements to existing felony statutes, which is the effect of the subcategories here, thereby creating

"expanded crimes" for which defendant can be vicariously responsible.

The state argues that *State v. Wedge, supra*, and our opinion in *State v. Moeller*, 105 Or App 434, 806 P2d 130, *rev dism* 312 Or 76, 815 P2d 701 (1991), have "blurred" what constitutes an element of a crime as opposed to a sentence enhancement by requiring, as a matter of constitutional law, that factors that have a direct bearing on the actual sentence must be pled and proved. Thus, the state argues, although the legislature did not expressly make the subcategory factors new elements of the underlying felonies, our opinion in *State v. Moeller* dictates that they are. The state misconstrues our holding. Irrespective of constitutional considerations, *Moeller* does not stand for the proposition that the subcategories of the Crime Seriousness Scale are elements of new or expanded crimes.

■    In *Moeller*, we held that the allegations of involvement in a "scheme or network" described part of the conduct with which the defendants were charged and that that had a direct bearing on the severity of the sentence that could be imposed. Therefore, the state had to give the defendant notice of that conduct through the charging instrument and had to prove that conduct to the trier of fact. The requirement that the state notify a criminal defendant of the conduct for which it intends to impose a punishment does not mean that that conduct is a part of the definition of a crime.

Requiring the state to give a criminal defendant notice of the conduct on which it intends to impose an enhanced punishment is not new. At common law, the state was required to allege in the accusatory instrument the aggravated conduct that it contended justified the imposition of an enhanced sentence. *See Merrill v. Gladden*, 216 Or 460, 468, 337 P2d 1774 (1959); *see also State v. Blacker*, 234 Or 131, 380 P2d 789 (1963). That requirement is now codified for sentencing guidelines purposes. ORS 135.711.[2]

---

[2] ORS 135.711 provides:

"For any felony committed on or after November 1, 1989, the accusatory instrument shall allege facts sufficient to constitute a crime or a specific subcategory of a crime in the Crime Seriousness Scale established by the rules of the State Sentencing Guidelines Board."

The guidelines rules do not show that the legislature intended to create new crimes when it approved the subcategories:

### "APPENDIX 3

### "OFFENSE SUBCATEGORIES

"The offenses in this appendix have been divided into different subcategories for the Crime Seriousness Scale of the grid. The statutory definition of each offense in this appendix captures a wide spectrum of criminal conduct. The following offense subcategories have been identified to classify the most common forms of these statutory offenses. Consequently, each subcategory includes a unique set of offense-specific characteristics that represents a different degree of crime seriousness *for sentencing purposes*." (Emphasis supplied.) *Oregon Sentencing Guidelines Implementation Manual* 28 (1989).

The subcategories are based on the existing statutory definitions of offenses. Those offenses encompass a broad range of criminal conduct, and the subcategories are the legislative recognition that some of that conduct is more serious and should be punished accordingly. Without question, the legislature has the authority to provide a greater penalty for a crime committed in an enhanced manner. *Merrill v. Gladden, supra,* 216 Or at 465.

The subcategories for burglary in the Crime Seriousness Scale did not create a new crime of "burglary in an occupied dwelling." The crime remains burglary in the first degree, just as it was before guidelines, and that is the crime of which defendant was found guilty.[3] Although he was provided notice of the enhanced factors of the subcategory, those factors go to sentencing enhancement. He cannot be held vicariously responsible for the enhanced penalty when it

---

[3] ORS 164.225(1) provides:

"A person commits the crime of burglary in the first degree if the person violates ORS 164.215 and the building is a dwelling, or if in effecting entry or while in a building or in immediate flight therefrom the person:

"(a) Is armed with a burglar's tool as defined in ORS 164.235 or a deadly weapon; or

"(b) Causes or attempts to cause physical injury to any person; or

"(c) Uses or threatens to use a dangerous weapon."

is undisputed that he did not commit the act upon which the enhancement is based.

The state argues that policy considerations should allow vicarious imposition of an enhanced penalty, because burglaries present a much higher risk of danger to victims when occupied residences are burglarized and that risk is the same, even if the defendant does not actually enter the dwelling and the accomplice does. That is an argument to be made to the sentencing court. Although it cannot impose the enhanced penalty for vicarious responsibility, it is not precluded from considering the circumstances of the burglary in determining whether there are substantial and compelling reasons to impose a departure sentence.

Conviction affirmed; remanded for resentencing.