Submitted on respondent's motion for reconsideration filed May 27, reconsideration allowed; opinion (112 Or App 657, 828 P2d 1063) modified in part; remanded for resentencing; opinion adhered to as modified October 14, 1992

STATE OF OREGON,
*Respondent,*

*v.*

ROGER JOHN COVEN,
*Appellant.*

(10-90-05327A; CA A68722)

839 P2d 261

Charles S. Crookham, Attorney General, Virginia L. Linder, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General, Salem, for motion.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

RIGGS, J.

Warren, P. J., specially concurring.

**RIGGS, J.**

The state seeks reconsideration of our decision ordering the trial court to dismiss the indictment. *State v. Coven*, 112 Or App 657, 828 P2d 1063 (1992). We allow reconsideration and modify our opinion.

A three-count indictment charged defendant with one count of unlawful delivery of a controlled substance, ORS 475.992(1), one count of unlawful possession of a controlled substance, ORS 475.992(4), and one count of endangering the welfare of a minor. ORS 163.575. Each drug count included an allegation that defendant committed the crime "as part of a drug cultivation, manufacture or delivery scheme or network." OAR 253-04-002(3). Defendant demurred to the indictment, arguing that the "scheme or network" allegation was unconstitutionally vague. After the court overruled his demurrer, it found defendant guilty of all of the charges after a trial on stipulated facts. Defendant appealed, and we reversed. Because the scheme or network allegation is unconstitutionally vague, we concluded that the court erred in overruling defendant's demurrer. *State v. Moeller*, 105 Or App 434, 439, 806 P2d 130, *rev dismissed* 312 Or 76, 815 P2d 701 (1991). We remanded with instructions to dismiss the indictment.

The state argues that we should not have required dismissal of the indictment. First, it contends that, because only the controlled substance charges were affected by invalidating the "scheme or network" allegation of the indictment, the indictment still validly charged defendant with endangering the welfare of a minor. Therefore, the state argues, we should not have reversed defendant's conviction on that count. We agree. *State v. Dunn*, 99 Or App 519, 523, 783 P2d 29 (1989), *rev den* 309 Or 522 (1990).

The state argues that, when only part of a charging instrument is invalidated, the charge remains valid if the remaining allegations still charge an offense. Because the indictment still charges controlled substance offenses, even disregarding the "scheme or network" allegation, the state contends, the court did not err in overruling defendant's demurrer and we should have affirmed defendant's convictions and remanded this case for resentencing. We recently

decided that issue contrary to the state's position. *State v. Costello*, 115 Or App 202, 837 P2d 552 (1992).

Reconsideration allowed; opinion modified by affirming conviction for endangering welfare of minor; remanded for resentencing on that change; opinion adhered to as modified.

**WARREN, P. J.,** specially concurring.

Although I agree with the majority that *State v. Costello*, 115 Or App 202, 837 P2d 552 (1992), controls the disposition of this case, I write separately to explain why, if we were not bound by that precedent, I would affirm defendant's convictions on the drug charges.

In one of its earliest decisions, the Oregon Supreme Court adopted the rule

"that the indictment must disclose upon its face a crime, charged in apt and proper words, and the prosecution is bound to do no more than prove the substantive offence charged. *All unnecessary words may * * * be rejected as surplusage, if the indictment would be good were they omitted.*" *Frisbie v. State*, 1 Or 248, 249 (1859). (Emphasis supplied.)

Subsequent cases refined that rule to provide:

"[A]n allegation in an indictment which is not necessarily descriptive of the offense may be regarded as surplusage and rejected, without vitiating the pleading, if enough remains to constitute a valid charge." *State v. Humphreys*, 43 Or 44, 48, 70 P 824 (1902).

*Accord*: *State v. Peppie*, 179 Or 532, 545, 173 P2d 468 (1946). Later cases incorporated into that rule the "prejudice" standard of ORS 135.715 (*formerly* ORS 132.590), which provides:

"No accusatory instrument is insufficient, nor can the trial, judgment or other proceedings thereon be affected, by reason of a defect or imperfection in a matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

Now the determinative test for whether an indictment that includes a disputed allegation remains valid is

"whether or not the inclusion of these allegations is so prejudicial to the rights of the defendant that they cannot be

treated as mere surplusage." *State v. Standard*, 232 Or 333, 338, 375 P2d 551 (1962).

*Accord*: *State v. Edwards*, 243 Or 440, 442, 412 P2d 526 (1966); *State v. Johnson*, 19 Or App 355, 358, 527 P2d 740 (1974), *rev den* (1975).

Oregon precedents have yet to establish a rigid test for determining what constitutes a prejudicial allegation, as opposed to mere surplusage. Instead, we have answered that question on a case by case basis. For example, we have held that it is prejudicial to strike an allegation when the effect would be to remove a potential defense. *See State v. Martinez*, 73 Or App 302, 304, 698 P2d 510 (1985). It is also true that if, disregarding an allegation, the indictment would not charge an offense, the allegation cannot be ignored. *State v. Russell*, 231 Or 317, 319, 372 P2d 770 (1962).

On the other hand, we have determined that it is not prejudicial to charge the greater and lesser included offense for the same alleged conduct in the same indictment. *State v. McCauley*, 8 Or App 571, 575, 494 P2d 438, *rev den* (1972). Neither is it prejudicial to allege alternative theories of negligence in the same count of a negligent homicide indictment, because "there could have been no doubt in defendant's mind as to the offense intended to be charged." *State v. Johnson, supra*, 19 Or App at 358.

In *State v. Moen*, 309 Or 45, 53, 786 P2d 111 (1990), the court considered whether it was prejudicial for an indictment to include the grand jury's answers to the three statutory questions concerning the penalty in an aggravated murder indictment. The court has held that those questions need not be alleged. *See State v. Wagner*, 305 Or 115, 172, 752 P2d 1136 (1988). Nevertheless, it concluded that the defendant was not prejudiced by the allegations, because the grand jurors did not hear the evidence related to those questions until after it had returned the indictment for aggravated murder, and the petit jurors did not receive a copy of the indictment that included the grand jury's answers.

Although we evaluate the prejudice resulting from the inclusion of a disputed allegation on a case by case basis, our analysis is not standardless. Rather, because we ultimately seek to determine the sufficiency of an indictment,

prejudice results only when the inclusion or omission of a disputed allegation defeats any of the purposes of the indictment. Those include:

"(1) [T]o inform the accused of the nature and character of the criminal offense with which he is charged with sufficient particularity to enable him to make his defense, (2) to identify the offense so as to enable the accused to avail himself of his conviction or acquittal thereof in the event that he should be prosecuted further for the same cause, and (3) to inform the court of the facts charged so that it may determine whether or not they are sufficient to support a conviction." *State v. Smith*, 182 Or 497, 500, 188 P2d 998 (1948).

Evaluating defendant's indictment in the light of those standards indicates that he was not prejudiced by the inclusion of the unconstitutionally vague scheme or network allegation.

Defendant was charged with possession and delivery of a controlled substance:

### "COUNT 1

"The defendants on or about the 25th day of May, 1990, in the county aforesaid, did unlawfully and knowingly deliver the controlled substance methamphetamine; contrary to statute and against the peace and dignity of the State of Oregon;

"The State further alleges that the above-described delivery occurred as part of a drug cultivation, manufacture or delivery scheme or network.

### "COUNT 2

"The defendants on or about the 25th day of May, 1990, in the county aforesaid, did unlawfully and knowingly possess the controlled substance methamphetamine; contrary to statute and against the peace and dignity of the State of Oregon;

"The State further alleges that the above-described delivery occurred as part of a drug cultivation, manufacture or delivery scheme or network."

Obviously, had the indictment not alleged that defendant committed his drug offenses as part of a scheme or network, the indictment would still have adequately charged those offenses. The first part of each count informed defendant of the nature and character of the criminal offenses with sufficient particularity to enable him to make his defense and, if

necessary, to assert former jeopardy should he be indicted for the same conduct in the future. Each allegation also presented sufficient facts to constitute the crime charged. The question becomes, then, whether the addition of the vague scheme or network allegations prejudicially impaired the validity of those charges.

Initially we note that subcategory factors used to rank crime seriousness are penalty provisions, not elements of the offense. *State v. Lark*, 113 Or App 458, 463, 833 P2d 1286 (1992). A defendant can be held criminally liable for the underlying charge, even if the state fails to prove the conduct specified in the subcategory factor. Accordingly, disregarding the scheme or network allegation would not remove a defense that was previously available to defendant. *See State v. Martinez, supra*, 73 Or App at 304.

We also note that an unproven allegation that does not defeat the imposition of criminal liability is, necessarily, mere surplusage.[1] Because the state can obtain a conviction without proving the conduct alleged as a subcategory factor, *State v. Lark, supra*, 113 Or App at 464, in such cases the unproven allegations will be mere surplusage. Accordingly, we are not precluded from considering allegations of subcategory factors as surplusage simply because ORS 135.711 requires the state to plead those allegations in the indictment.

Because subcategory factors can be considered surplusage in some cases, and disregarding a subcategory factor will not impair the defense, we must consider what, if any, prejudice flows from our conclusion that the scheme or network subcategory factor is unconstitutionally vague.

In *State v. Moeller*, 105 Or App 434, 806 P2d 130, *rev dismissed* 312 Or 76, 815 P2d 701 (1991), we held that the scheme or network subcategory factor was unconstitutionally vague, because

"[i]t is impossible to discern from the phrase where the offenses end and where the aggravation begins, *what conduct over and above the offenses* constitutes the aggravating

---

[1] For example, if a defendant is charged in a 2 count indictment and is convicted on 1 count but acquitted on the other, the second count is mere surplusage, because the defendant was not prejudiced by the second count, even though the grand and petit juries heard evidence concerning it and the defendant had to defend against it.

events or how the words 'scheme or network' play into the equation." 105 Or App at 441. (Emphasis supplied.)

If that means that adding the scheme or network allegation to a charge obscures the distinction between what the state has to prove to obtain a conviction on the underlying charge and what it has to prove to rely on the enhancing factor at sentencing, then the allegation could not be considered surplusage. The allegation would be prejudicial, because the grand jury may have indicted defendant on less evidence than is required to indict on the underlying charge. On the other hand, if the scheme or network allegation is vague only because we cannot determine "what conduct over and above" the charged offense constitutes the aggravating events, then the allegation would be mere surplusage.

A statute that imposes criminal liability establishes a constant culpability threshold. If a person's conduct crosses the threshold by just a step, the person violates the statute.

With most statutes, the same violation occurs if the defendant proceeds 1 or 100 steps past the threshold. For example, either possession of 1 ounce or 100 pounds of cocaine constitutes unlawful possession of a controlled substance. ORS 475.992. Because in some instances, conduct that is 100 steps past a particular threshold is considered to be more serious than conduct that is only 1 step beyond, the State Sentencing Guidelines Board created sentencing subclassifications for certain offenses. OAR 253-04-002(2) provides:

"When the statutory definition of an offense includes a broad range of criminal conduct, the offense may be subclassified factually in more than one crime category to capture the full range of criminal conduct covered by the statutory offense."

By subclassification, the sentencing guidelines attempt to punish more severely unlawful conduct that is a certain point past the culpability threshold established by the statutory definition of the crime. However, the guidelines could not and did not eliminate the culpability threshold. For each crime that is subclassified and ranked on the sentencing guidelines grid, the unenhanced version of the crime also appears and forms the basis for every indictment charging any version of the crime, enhanced or unenhanced. The task

in subclassifying crimes was to clearly define how far beyond the culpability threshold of the unenhanced version of a crime a defendant had to be before he would become subject to an enhanced penalty. The scheme or network allegation failed in that task, because defendants, prosecutors, jurors and judges could not precisely determine at what point beyond the threshold enhanced liability would attach. It did not fail because we were no longer able to determine where the culpability thresholds of the unenhanced version of the drug crimes were. As a review of the procedural history of *State v. Moeller, supra,* indicates, that is all that we decided in that case.

In *Moeller,* the defendants did not challenge the charging part of the indictments; they only challenged the validity of the scheme or network allegation. The state argued that we should not entertain the defendants' appeal, because a demurrer is not the proper procedural device to challenge only a penalty provision. We disagreed, relying on *City of Portland v. Dollarhide,* 300 Or 490, 714 P2d 220 (1986), where the court held that a defendant can challenge a penalty provision through a demurrer, because if the penalty provision is invalid, the indictment would not charge an offense. On the basis of that decision, we said:

> "Although *Dollarhide* can be read to condition its conclusion on there being a challenge to the charge as well as the penalty and on the entire penalty provision being challenged, *we do not read it that narrowly.* Like the argument here, the defendant's argument in *Dollarhide* and the court's holding were that only part of the penalty provision was invalid, and *the court's disposition was a remand for trial on the offense charged,* subject to the valid part of the penalty provision." 105 Or App at 438. (Emphasis supplied.)

Had the defendants in *Moeller* challenged the charging part of their indictment, or had we concluded that the vagueness of the scheme or network allegation made it impossible to determine the culpability threshold of the charged offenses, we would not have needed to rely on *Dollarhide* to resolve the state's contention. A demurrer, without question, is the proper procedure for challenging the validity of the charged offense on vagueness grounds.[2] ORS 135.630(4);

---

[2] A vagueness challenge asserts, essentially, that it is impossible to determine where the culpability threshold for a particular offense is.

*State v. McKenzie*, 307 Or 554, 560, 771 P2d 264 (1989). By relying on *Dollarhide*, we necessarily recognized the limits of the defendants' challenge. In fact, we even explicitly expanded the holding of that case to cover a situation where there was no "challenge to the charge." The defendants' sole contention was that the scheme or network allegation was too vague to determine what conduct beyond the culpability threshold of the charged drug offenses would subject them to the enhanced penalty. That is all that we decided; it was all that we needed to decide.

Because only the scheme or network allegations of defendant's indictment were unconstitutionally vague, defendant was no more prejudiced by the inclusion of those allegations than would be any defendant who is charged with an enhanced penalty that the state fails to prove. For example, in *State v. Graves*, 299 Or 189, 700 P2d 244 (1985), the defendant was indicted for burglary in the first degree. The indictment alleged that the defendant committed a second degree burglary while armed with a burglar's tool. The defendant demurred, arguing that the term "burglar tool" was unconstitutionally vague. The trial court overruled the demurrer, and the defendant was convicted as charged. The Oregon Supreme Court reversed and upheld the demurrer. However, because it concluded that the jury had necessarily found all of the elements of a second degree burglary, the court remanded the case to the trial court to enter a conviction and sentence for that crime.

Although the conduct that elevates second degree burglary to first degree burglary is not denominated as an enhanced penalty provision, the effect of the allegation is the same. A defendant charged with first degree burglary is subject to a much greater sentence than a defendant charged with a second degree burglary. The conduct that elevates a second degree burglary to a first degree burglary is, of course, some conduct beyond the culpability threshold of second degree burglary. In *Graves*, the court reversed the conviction for the greater crime, because it was impossible to determine precisely what conduct beyond the culpability threshold of second degree burglary would subject a defendant to the greater penalties.[3]

---

[3] Although the opinion in *State v. Graves*, 299 Or 189, 700 P2d 244 (1985) does not expressly state that the allegation that the defendant was armed with a burglar's

Similarly, a defendant charged with committing a drug offense as part of a scheme or network is subject to a greater penalty than a defendant charged only with committing the unenhanced version of that same offense. Moreover, just like the burglary statutes, the conduct that subjects a defendant to an enhanced penalty is some conduct beyond the culpability threshold of the unenhanced offense. Because the scheme or network allegation is vague, like the term "burglar tool," we cannot determine precisely what conduct beyond that threshold will subject a defendant to the enhanced penalty. Nevertheless, the trier of fact, like the trier of fact in *Graves*, necessarily found defendant's conduct sufficient to cross the threshold for the unenhanced offense. Accordingly, if we were writing on a clean slate, I would not dismiss the drug charges and would only remand for resentencing.

---

tool was not prejudicial, the effect of its ruling was to treat the allegation as surplusage.