## MICHAEL JENKINS,
*Petitioner,*

*v.*

## BOARD OF PAROLE AND POST-PRISON SUPERVISION,
*Respondent.*

(CA A76113)

864 P2d 1352

Lawrence J. Hall, Deputy Public Defender, argued the cause for petitioner. With him on the brief was Sally L. Avera, Public Defender.

Harrison Latto, Assistant Attorney General, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Deits, Presiding Judge, and Durham and Leeson, Judges.

DEITS, P. J.

## DEITS, P. J.

Petitioner seeks review of a final order of the Board of Parole and Post-Prison Supervision setting his parole release date to follow 240 months of incarceration. He argues that the Board violated the *ex post facto* provisions of the Oregon[1] and United States[2] Constitutions by setting his parole release date under rules that were not in effect when he committed his offenses. Petitioner also contends that the Board's use of his juvenile adjudications in calculating his criminal history violated the *ex post facto* provisions because, at the time that he committed his offenses, the Board was not authorized to use juvenile adjudications to calculate criminal history. We affirm.

In 1979, petitioner committed attempted murder, two counts of rape in the first degree, kidnapping in the first degree, sodomy in the first degree, robbery in the first degree and robbery in the third degree. He was sentenced to six 20-year terms, each with a 10-year minimum, and a 3-year term for third-degree robbery. His sentences were ordered to be served consecutively. In 1980, at petitioner's initial prison term hearing, the Board determined that under OAR 254-135-015(2),[3] his matrix range was 522 to 746 months. It then overrode one of his minimum terms and set his parole release date to follow 240 months of incarceration.

After our decisions in *Roof v. Board of Parole*, 85 Or App 188, 736 P2d 193 (1987), and *Hill v. Board of Parole*, 85 Or App 215, 735 P2d 1301 (1987), in which we held that under the rules then in effect the Board had to either override or sustain all of a prisoner's consecutive minimum terms,

---

[1] Article I, section 21, of the Oregon Constitution provides, in part: "No *ex post facto* law * * * shall ever be passed * * *."

[2] Article I, section 10, of the United States Constitution provides, in part: "No state shall * * * pass any * * * *ex post facto* Law * * *."

[3] In 1979, OAR 254-135-015(2) governed the establishment of parole release dates for prisoners with consecutive sentences and provided that

"[t]he Board shall sum the ranges established for each consecutive offense[.]"

OAR 254-135-001 defined the guideline ranges:

"[R]anges of months to be served as a prison term before parole release for each offense severity rating and history/risk score. A parole release date will normally be set within the applicable guideline range. The Board may only vary from the ranges if it finds the presence of aggravation or mitigation."

petitioner elected to have the Board reconsider his parole release date. On March 28, 1990, the Board did so. The Board computed his matrix range by summing the ranges established by his history/risk score and crime category for each consecutive sentence. OAR 255-35-021(5).[4] The Board set his matrix range at 522 to 746 months, the same matrix range that the Board had set at his initial prison term hearing under the rules in effect at the time of defendant's crimes. The Board then decided, by unanimous vote, to override all of petitioner's minimum terms and to "unsum" four of petitioner's seven consecutive terms. OAR 255-35-022(2); ORS 144.783(2). After the Board "unsummed" four of petitioner's seven consecutive sentences, his matrix range was 236 to 332 months. Once again, the Board exercised its discretion and set petitioner's parole release date to follow 240 months of incarceration.

■■  Petitioner argues that changes in the Board's rules between 1982 and 1990 increased his punishment in violation of the *ex post facto* clauses of the state and federal constitutions. To establish an *ex post facto* violation, petitioner must show that the Board's application of the 1990 rules increased his *possible* punishment from that available under the rules in effect at the time of his crime. *See Williams v. Board of Parole*, 98 Or App 716, 780 P2d 793 (1989), *rev den* 309 Or 522 (1990). Even assuming *arguendo* that the 1982 rules were more favorable to him than the 1990 rules, petitioner has not established an *ex post facto* violation. The 1990 rules did not authorize the Board to impose a greater punishment of petitioner than that provided by the rules in effect in 1979 when he committed his crimes. Petitioner has not shown that application of the new rules disadvantaged him and, accordingly, he has not proven an *ex post facto* violation under the state or federal constitution. *See Glasser v. Board of Parole*, 123 Or App 610, 860 P2d 832 (1993); *Williams v. Board of Parole, supra.*

---

[4] OAR 255-35-021(5) provides:

"To determine the unified range for inmates with consecutive sentences which involve a crime listed in section (4) of this rule, the Board shall establish the matrix range for each crime by using the inmate's history/risk score pursuant to **Exhibit B** and the applicable crime category rational. The unified range shall be the sum of the ranges established under this section." (Boldface in original.)

■     Petitioner next assigns as error the Board's use of his juvenile adjudications to calculate his criminal history.[5] He argues that at the time he committed his crimes, the Board was not authorized to consider juvenile adjudications in calculating a criminal history score. Petitioner concedes that the Board was authorized to consider "convictions as an adult or juvenile" under OAR 254-135-010,[6] but argues that juvenile convictions are not the same as juvenile adjudications. Petitioner is correct that in a juvenile proceeding in Oregon, a juvenile is not convicted of a crime but rather is adjudicated to be within the jurisdiction of the court for committing acts that, if committed by an adult, would be a crime. ORS 419.476(1)(a). However, petitioner interprets OAR 254-135-010 too narrowly. The rule authorizes the Board to consider juvenile convictions. If "convictions as [a] * * * juvenile" includes only juveniles who were convicted of crimes as an adult, the use of the term juvenile in OAR 254-135-010 would be superfluous. We defer to the Board's interpretation of the rule to include juvenile adjudications.

Affirmed.

---

[5] Defendant argues that the Board's rules at the time of his offense did not authorize the use of juvenile adjudications in assessing criminal history scores. He does not argue that the use of his juvenile adjudications to increase his criminal history score violated the state or the federal constitution. We addressed that argument in *State v. Stewart*, 123 Or App 147, 859 P2d 545 (1993).

[6] In 1979, OAR 254-135-010 provided:

"The Board shall use the table in Exhibit B to make a criminal history/risk assessment and shall assign a score from Zero to 11 as set forth in Exhibit B as a formal finding of fact in the prisoner's presence at the prison term hearing."

Exhibit B provided that if an inmate had "[n]o prior felony or misdemeanor convictions as an adult or *juvenile*" (emphasis supplied), three points were added to the inmate's criminal history/risk assessment score. Exhibit B also provided that "convictions over 20 years old, convictions that have been pardoned, or *juvenile* or adult 'status offenses' (runaway, truancy, incorrigibility, drunk in public)" (emphasis supplied), were not to be counted.