Argued and submitted January 29, resubmitted In Banc July 14, remanded in part; otherwise affirmed September 15, respondent's motion for reconsideration filed October 20, 1993, allowed by opinion February 23, 1994
See 126 Or 456 (1994)
Appellant's petition for reconsideration denied February 23, petition for review pending 1994

## STATE OF OREGON,
*Respondent,*

*v.*

## MATTHEW WAYNE STEWART,
*Appellant.*

(10-90-07017C; CA A71065)

859 P2d 545

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Charles S. Crookham, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

RIGGS, J.

De Muniz, J., concurring in part; dissenting in part.

## RIGGS, J.

Defendant appeals the sentence imposed on his convictions of two counts of burglary in the first degree, ORS 164.225, for burglarizing two houses. We affirm the sentence on the first count and remand for resentencing on the second count.

Before sentencing, defendant moved to exclude his juvenile adjudications from the calculation of his criminal history score. That motion was denied and the court used defendant's four juvenile adjudications for burglary when it assigned him a criminal history score of G. Absent the juvenile adjudications, defendant's criminal history score would have been I. The court declared that the burglary of the occupied dwelling was the primary offense and sentenced defendant to 22 months in prison and 36 months of post-prison supervision. After finding that the county jail could accommodate him for 180 days on the second count of burglary, the court imposed 180 days of jail incarceration, consecutive to the prison term, and a 36-month term of probation.

■ The indictment on the first count contains an allegation, enhancing the seriousness of the crime, that defendant burglarized an occupied dwelling. Defendant argues that, because the state had to prove that he knew that the house was occupied, the court erred in refusing to give his requested instruction which, he claims, ''would have properly apprised the jury that knowledge is the mental state for the penalty enhancer.'' The proposed instruction provided, in part:

> ''To establish the crime of Burglary in the First degree of an occupied dwelling, the state must prove beyond a reasonable doubt each of the following elements:
>
> ''* * * * *
>
> ''(4) That the Defendant, at the time of the entry or remaining, knew that the premises described in the charge was an occupied building.''

We need not decide whether the state must prove that defendant knew that the building was occupied in order for the sentence to be enhanced. Defendant concedes that his proposed instruction treated the penalty enhancer as an element of the crime, which it is not. *State v. Lark*, 113 Or App 458, 463, 833 P2d 1286 (1992), *aff'd in part; rev'd in part on other*

*grounds* 316 Or 317, 851 P2d 1114 (1993). "A requested instruction is properly refused unless it ought to have been given in the very terms in which it was proposed." *State v. Francis*, 284 Or 621, 626, 588 P2d 611 (1978). Because the requested instruction misstated the law, it was properly refused.

■ Defendant next assigns error to the trial court's use of his juvenile adjudications to calculate his criminal history score pursuant to OAR 253-04-007.[1] He argues that, because there is no right to a jury trial in juvenile adjudications, their use to enhance adult prison sentences is unconstitutional. Defendant's argument relies primarily on *City of Pendleton v. Standerfer*, 297 Or 725, 688 P2d 68 (1984). *See also State v. Grenvik*, 291 Or 99, 628 P2d 1195 (1981); *Brown v. Multnomah County Dist. Court*, 280 Or 95, 570 P2d 52 (1977). In *City of Pendleton v. Standerfer, supra*, the defendant was convicted of DUII in 1982. His petition for diversion was denied because of a 1979 DUII conviction. The Supreme Court held that the 1979 conviction was invalid because the defendant had no counsel and there was no waiver of counsel. Because the 1979 conviction was invalid, it could not be used to deny diversion in 1982.

Defendant analogizes the invalid uncounselled conviction in *Standerfer* to his valid juvenile adjudication, on the ground that both proceedings lacked the full range of protections required in a criminal trial. He argues that his juvenile adjudiction therefore was invalid for purposes of enhancing a criminal penalty. However, defendant's reliance on *Standerfer* is misplaced, because juvenile proceedings are *sui generis*. It has long been recognized that commitment to a juvenile facility is a loss of liberty, and that due process requires a right to counsel, confrontation and cross-examination and other safeguards associated with criminal

---

[1] OAR 253-04-007 reads:

"The criminal history categories in the Criminal History Scale are:

"* * * * *

"G The offender's criminal history includes four or more adult convictions for Class A misdemeanors; one adult conviction for a non-person felony, or three or more juvenile adjudications for non-person felonies, but no adult conviction or juvenile adjudication for a person felony."

Defendant has four juvenile adjudications for non-person felonies.

procedure, with the notable exception of a right to a trial by jury. In *State v. Turner*, 253 Or 235, 238, 240, 453 P2d 910 (1969), the court held that juvenile adjudications had sufficient guarantees of due process to commit juveniles to juvenile facilities, even in the absence of a jury trial. *See also State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 857 P2d 842 (1993). An adjudication sufficient to commit a juvenile to a juvenile facility can later be used to enhance a sentence as an adult.

Defendant next assigns error to the jail sentence and the probationary term imposed on the second burglary charge. This assignment was not preserved and we do not consider it. *State v. Farmer*, 317 Or 220, 224, 856 P2d 623 (1993); *see also State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

 Defendant argues that his consecutive sentence on the second burglary charge was improper in three respects. First, he argues that the imposition of a jail term consecutive to a prison term violated OAR 253-12-020(2)(d), which reads: "[I]f any sentence includes a prison term, the entire incarceration term of the consecutive sentences shall be served in prison." Defendant is correct. Second, he contends that the trial court could not impose a sentence of 180 days — the maximum number of custody units. That, too, is correct. OAR 253-05-013(3), which allows a trial court to impose the maximum number of custody units for a jail term if space is available in the local jail, does not apply to consecutive prison sentences. *State v. Holliday*, 110 Or App 426, 432, 824 P2d 1148 (1992). Third, defendant challenges the separate probationary term imposed on the second charge. That probationary term should have merged with the post-prison supervision ordered for the first charge. *State v. Dummitt*, 115 Or App 487, 490, 839 P2d 246 (1992); OAR 253-12-020(3)(a).

Remanded for resentencing on Count II; otherwise affirmed.

**De MUNIZ, J.,** concurring in part, dissenting in part.

I agree with the majority that the trial court did not err in refusing defendant's requested instruction. I also agree

that defendant's assignment of error concerning the imposition of a jail sentence and the probationary term imposed on the second burglary charge should not be considered, because no objection was made in the trial court. However, I respectfully disagree with the majority's conclusion that juvenile adjudications can be used as the sole basis to lengthen an adult offender's term of incarceration.

Article I, section 11, of the Oregon Constitution guarantees criminal defendants the right to a trial before a jury. If an adult is convicted in a proceeding where that constitutional right has been denied, then the conviction may not be used to enhance a sentence that may be imposed for a subsequent conviction. *See City of Pendleton v. Standerfer*, 297 Or 725, 688 P2d 68 (1984). Ironically, the majority holds that a juvenile adjudication without a jury, and without the right to a jury, may be used as the sole basis for increasing the term of imprisonment of an adult offender. That outcome offends Article I, section 11, because it is inconsistent with the constitutional underpinnings that permit juvenile adjudications without juries. Accordingly, I dissent.

The proper analysis of this issue begins with a basic understanding of the sentencing guidelines. In *State v. Davis*, 315 Or 484, 847 P2d 834 (1993), the court described how the guidelines operate:

"The centerpiece of the sentencing guidelines is the 99-block Sentencing Guidelines Grid. *See* OAR ch 253, app 1 (setting out the grid). A 'Crime Seriousness Scale' serves as the vertical axis of the grid. Most felonies fall within one of the 11 categories on the Crime Seriousness Scale. A 'Criminal History Scale' serves as the horizontal axis of the grid. The Criminal History Scale is made up of nine categories, ranging from 'minor misdemeanor or no criminal record' to 'multiple (3+) felony person offender.' The appropriate sentence for a given felony conviction is determined by (1) locating the appropriate category for the crime of conviction on the Crime Seriousness Scale; (2) locating the appropriate category for the convicted offender on the Criminal History Scale; and (3) locating the grid block where the two categories intersect. Each grid block contains what is called a 'presumptive sentence that, in cases like the present one, is expressed in a range of months of imprisonment. OAR 253-05-001.

"A sentencing judge must impose a presumptive sentence within the range established by the appropriate grid block unless there are 'substantial and compelling' reasons in aggravation or mitigation, in which case the judge may depart from the presumptive range. OAR 253-08-001[.]" 315 Or at 487.

In summary, under the guidelines, the type of sentence (probation or incarceration) and the term of incarceration depend on the seriousness of the crime committed and the extensiveness of the offender's criminal history. Here, for example, on the crime at issue, defendant's presumptive sentence would be 18 months if his four prior juvenile adjudications are excluded from his criminal history. For sentencing purposes, three or more juvenile adjudications for non-person felonies are considered to be equivalent to one non person felony conviction. Under OAR 253-04-007, defendant's juvenile adjudications increase his presumptive sentence to 22 months. In other words, he will be imprisoned for four months as a direct consequence of his non-jury juvenile adjudications.

The majority concludes:

"[J]uvenile adjudications ha[ve] sufficient guarantees of due process to commit juveniles to juvenile facilities, even in the absence of a jury trial. An adjudication sufficient to commit a juvenile to a juvenile facility can later be used to enhance a sentence as an adult." 123 Or App at 151. (Citation omitted.)

A number of federal circuit courts have reached the same conclusion in cases involving the federal sentencing guidelines. *E.g., McCullough v. Singletary*, 967 F2d 530 (11th Cir 1992), *cert den* ____ US ____, 113 S Ct 1423, 122 L Ed 2d 792 (1993); *U.S. v. Unger*, 915 F2d 759 (1st Cir 1990), *cert den* 498 US 1104, 111 S Ct 1005, 112 L Ed 2d 1088 (1991); *U.S. v. Williams*, 891 F2d 212 (9th Cir 1989), *cert den* 494 US 1037, 110 S Ct 1496, 108 L Ed 2d 631 (1990). However, the United States Supreme Court has not addressed the issue, and I think that the circuit courts are wrong, because they proceed from the same faulty premise that the majority relies on — that the adjudication phase in a juvenile proceeding is the functional equivalent of the "guilt or innocence" determination in a criminal trial.[1] That is not so.

---

[1] I use the phrase "guilt or innocence" determination simply to describe the adjudicative phase of a criminal case. In reality, a jury's finding of not guilty does not

A juvenile in a juvenile proceeding does enjoy many of the constitutional rights that we equate with fundamental fairness and due process in an adult criminal case. However, the purpose of juvenile adjudications renders those proceedings fundamentally different from adult adjudications. At the heart of our juvenile justice system is the concept of *parens patriae*. That foundation is not, nor should it be, completely compatible with a fully adversarial process. In juvenile proceedings, "the ultimate question * * * is not one of 'guilt' or 'innocence,' but rather one of determining what is in the best interest of the child." *See State v. Turner*, 253 Or 235, 241, 453 P2d 910 (1969).

Under that rehabilitative model, the label affixed to a juvenile's conduct at the adjudication stage does not necessarily serve the same kind of accountability function as does the label affixed to conduct in an adult criminal proceeding. Unlike an adult criminal proceeding, the label affixed to conduct at the adjudication stage in a juvenile proceeding often has little significance in determining an appropriate disposition. In other words, because the best interests of the child, even at the adjudication stage, is the paramount concern in a juvenile proceeding, the label affixed to a juvenile's conduct may or may not accurately reflect the seriousness (as a violation of societal laws) of that conduct. Permitting the label affixed to juvenile conduct at the adjudication stage to later become the sole basis for lengthening the term of imprisonment for a subsequent adult offense could seriously and adversely affect the modified adversary system that is now an integral part of our rehabilitative model of juvenile justice.

I accept the proposition that a jury determination is not constitutionally required in a juvenile proceeding. *State ex rel Juv. Dept. of Klamath County v. Reynolds*, 317 Or 560, 857 P2d 842 (1993). However, the unavailability of a jury ought to prevent the use of juvenile adjudications as the sole basis for enhancing an adult's prison sentence. In *State v. Turner, supra*, the court described the important tempering function of a jury in the criminal justice system:

---

establish the criminal defendant's innocence, but only that the defendant's guilt was not proven beyond a reasonable doubt.

"One of the principal reasons for retaining trial by jury in the administration of criminal justice has been the desire of American society to mitigate the letter of the criminal law. When the question is 'guilt' or 'innocence,' the people feel more secure in their confrontations with the government when a jury is present. The jury bring to its work in a criminal case a combination of sentiment and common sense. Frequently, the jury views the state with healthy skepticism, and tempers justice with subjective values for which no provision has been made in any statute. As Mr. Justice Holmes observed in *Horning v. District of Columbia*, 254 US 135, 138, 41 S Ct 53, 65 L Ed 185 (1920), '* * * the jury has the power to bring in a verdict in the teeth of both law and facts.' " 253 Or at 242.

I agree that the kind of fully adversarial form of fact finding that a jury engages in would add little to, and may be incompatible with, a juvenile justice system whose purpose is to determine what kind of care, custody and control will best meet the needs of the child.[2] I also agree that, for the purpose of making that kind of rehabilitative determination, a non-jury adjudication that an offender committed an act that would be criminal if committed by an adult is constitutionally valid.

The fact that defendant's previous juvenile adjudications were constitutionally valid for certain purposes does not mean that they were "valid for all purposes." *Baldasar v. Illinois*, 446 US 222, 226, 100 S Ct 1585, 64 L Ed 2d 169 (1980) (Marshall, J., concurring). Like this case, *Baldasar* involved the use of a prior adjudication to enhance the sentence imposed for a subsequent conviction. Baldasar had been convicted of petty theft, but had not been represented by counsel, nor had he waived counsel. That misdemeanor conviction was not unconstitutional, because he did not face incarceration for that offense. However, Baldasar was convicted of violating the same law a second time, and repeat

---

[2] ORS 419.474(2) provides:

"The provisions of ORS 419.472 to 419.597, 419.800 to 419.839 shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance and control, preferably in the child's own home, as will lead to the child's welfare and the best interest of the public, and that when a child is removed from the control of the parents of the child the court may secure for the child care that best meets the needs of the child."

offenders *are* subject to incarceration under the Illinois statute. Justice Marshall observed:

> "[Mr. Baldasar] was sentenced to an increased term of imprisonment *only* because he had been convicted in a previous prosecution which he had *not* had the assistance of appointed counsel in his defense." 446 US at 224. (Emphasis in original.)

The lead *per curiam* opinion agreed with Justice Marshall's reasoning, and it concluded that the sentence enhancement that deprived Baldasar of his liberty was unlawful. 446 US at 224.

There is no meaningful distinction between this case and *Baldasar*. Both cases involve sentence enhancement resulting from the deprivation of a liberty interest on the basis of prior adjudications. In both cases, the former adjudications did not have the full panoply of constitutional safeguards normally associated with criminal prosecutions. In both cases, the prior adjudications were constitutional *for the purposes of those proceedings*. In both cases, the defendant was subsequently convicted of a crime and given a term of imprisonment solely on the basis of the former, lawful, adjudication.

An adult criminal offender may be deprived of a liberty interest only after a trial that offers the full complement of constitutional safeguards, unless the offender has sentiently waived them. A sentence enhancement on the basis of a prior, lawful, adjudication that did not have the same safeguards is unconstitutional. The United States Supreme Court was right, and the majority here is wrong. Defendant's right to a jury under Article I, section 11, was violated by using the juvenile adjudications to imprison him.

I dissent.

Edmonds, Durham and Leeson, JJ., join in this dissent.