Argued and submitted January 6; resubmitted January 19, decisions of the Court of Appeals affirmed and judgments of the circuit court affirmed April 21, petition for reconsideration denied May 30, 1995

STATE OF OREGON,
*Respondent on Review,*

*v.*

MATTHEW WAYNE STEWART,
*Petitioner on Review.*

(CC 10-90-07017C; CA A71065; SC S40693)

STATE OF OREGON,
*Respondent on Review,*

*v.*

JESSE ALLEN BILLINGS,
aka Running Deer,
*Petitioner on Review.*

(CC 9202-0365, 9202-0366;
CA A76560 (Control), A76561; SC S40890)
(Cases Consolidated for Argument and Opinion)
892 P2d 1013

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause for petitioners on review. With him on the briefs were Sally L. Avera, Public Defender, and Louis R. Miles, Deputy Public Defender, Salem.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent on review. With her on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Angela Sherbo, Portland, filed a brief on behalf of *amicus curiae* Juvenile Rights Project, Inc.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.**

VAN HOOMISSEN, J.

Fadeley, J., dissented and filed an opinion.

Unis, J., dissented and filed an opinion, in which Fadeley, J. joined.

---

** Durham, J., did not participate in this decision.

## VAN HOOMISSEN, J.

The issue in these consolidated cases is whether the sentencing courts erred in denying defendants' motions to preclude the use of their juvenile adjudications in calculating their "criminal history scores" under the sentencing guidelines. The Court of Appeals affirmed the sentencing courts' rulings. *State v. Stewart*, 123 Or App 147, 151, 859 P2d 545 (1993), *adhered to as modified on reconsideration*, 126 Or App 456, 867 P2d 794 (1994); *State v. Billings*, 124 Or App 682, 865 P2d 1340 (1993). We also affirm.

### FACTS AND PROCEDURAL HISTORY

Defendant Stewart was convicted by a jury of two counts of burglary in the first degree. Before sentencing, he moved to preclude the use of his juvenile adjudications for burglary and unauthorized use of vehicle in calculating his criminal history score under the sentencing guidelines.[1] He argued that, because he had not been afforded jury trials in his juvenile proceedings, the use of those juvenile adjudications in assessing his criminal history score violated the jury trial provision of Article I, section 11, of the Oregon Constitution.[2] The sentencing court denied Stewart's motion. The court then determined that Stewart fell within gridblock 8-G on the guidelines matrix and sentenced him to a prison term of 22 months, with 36 months of post-prison supervision, on the primary offense. If the sentencing court had not used Stewart's juvenile adjudications, his maximum presumptive prison sentence would have been 18 months. Thus, his sentence was increased by at least 4 months as a consequence of considering his juvenile adjudications.

---

[1] OAR 253-04-006(2) provides in part:

"An offender's criminal history is based upon the number of adult felony and Class A misdemeanor convictions and juvenile adjudications in the offender's criminal history at the time the current crime or crimes of conviction is sentenced."

"Juvenile adjudications" are defined as "formal adjudication or finding by a court that the juvenile has committed an act which, if committed by an adult, would be punishable as a felony." OAR 253-03-001(11).

[2] Article I, section 11, of the Oregon Constitution, provides in part:

"In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury[.]"

Defendant Billings was convicted by a jury of first degree sexual abuse and first degree attempted sodomy. Before sentencing, he moved to preclude the use of his juvenile adjudications for burglary, sodomy, and assault in calculating his criminal history score under the sentencing guidelines. Essentially, his argument was the same as that of Stewart. The sentencing court denied Billings' motion. The court then determined that Billings' conviction for sexual abuse fell under gridblock 8-C on the guidelines matrix and, accordingly, sentenced him to a presumptive prison sentence of 34 months. The court separately sentenced Billings on the attempted sodomy conviction under gridblock 8-C and again imposed a presumptive prison sentence of 34 months, to be served consecutively to his sentence for sexual abuse. Billings' juvenile adjudication for sodomy changed his criminal history score from 8-E to 8-C.

Stewart and Billings appealed. The Court of Appeals, sitting in banc, rejected Stewart's argument, holding that "[a]n adjudication sufficient to commit a juvenile to a juvenile facility can later be used to enhance a sentence as an adult." *Stewart*, 123 Or App at 151.[3] In a dissenting opinion in *Stewart*, four Court of Appeals judges opined that, because Article I, section 11, guarantees adult criminal defendants a right to a jury trial, nonjury juvenile adjudications may not be used in a later criminal proceeding "because [that outcome] is inconsistent with the constitutional underpinnings that permit juvenile adjudications without juries." *Stewart*, 123 Or App at 152 (De Muniz, J., dissenting). *Billings*, which presented the same legal issue, was affirmed from the bench.[4] We allowed review in both cases.

## COLLATERAL ATTACK

We first consider the state's position that defendants' argument under Article I, section 11, is an impermissible collateral attack on the validity of their juvenile

---

[3] In *Stewart*, the Court of Appeals remanded for resentencing on Count II. On review, the state does not challenge that decision.

[4] In his Court of Appeals brief and in his petition for review, Billings also raised claims under Article I, sections 20 (equal protection) and 21 (*ex post facto* laws), of the Oregon Constitution. Those claims were not preserved for review and they are not mentioned in defendants' brief on the merits. Accordingly, we do not consider them. Billings also argued in the Court of Appeals that the trial court erred when it used the same criminal history classification to order both of his consecutive sentences. Because that claim has not been asserted on review, we do not consider it.

adjudications. The state relies primarily on *Custis v. United States*, 511 US ___, 114 S Ct 1732, 128 L Ed 2d 517 (1994). *Custis* held that, under federal sentencing guidelines, an adult offender may not attack collaterally the validity of a prior state conviction used at the offender's sentencing hearing on the ground that the offender had inadequate assistance of counsel in the prior proceeding. In *Custis*, the Supreme Court of the United States concluded that federal sentencing guidelines do not provide specific statutory authority for such a challenge and that the Constitution of the United States does not require that collateral attacks be allowed. 128 L Ed 2d at 525-26. Collateral attacks are permitted only where the prior conviction was obtained in violation of the offender's right to appointed counsel. *Id.* at 526-28 (citing *Gideon v. Wainwright*, 372 US 335, 83 S Ct 792, 9 L Ed 2d 799 (1963)).

The Supreme Court's decision in *Custis* was based on the fact that "failure to appoint counsel for an indigent defendant [is] a unique constitutional defect" that "rises to the level of a jurisdictional defect"; that allowing other collateral attacks during sentencing on a subsequent crime "would require a sentencing court to rummage through" the records of prior cases; and that allowing additional collateral attacks would deprive earlier judgments of their finality and "inevitably delay and impair the orderly administration of justice." *Custis*, 128 L Ed 2d at 528. We conclude, however, that defendant's argument is not a collateral attack, because defendants could not have made a direct attack on the future consequences of their juvenile adjudications *in juvenile court*. Thus, defendants' argument is not the sort of impermissible collateral attack discussed by the Court in *Custis*.

We also agree with defendants that, unlike in *Custis*, there is a statutory basis for their challenge. ORS 137.079 contains the requirement that presentence reports are to be considered by a sentencing court. ORS 137.079(5) provides in part:

"(c) * * * Except to the extent that any disputed portion is later changed by agreement of the district attorney and defendant with the approval of the court, the state shall have the burden of proving by a preponderance of evidence *any disputed part of the defendant's criminal history*. The court

shall allow the state reasonable time to produce evidence to meet its burden.

"(d)  The *court shall correct any error in the criminal history* as reflected in the presentence report.

"* * * * *

"(f)  Except as provided in ORS 138.222, the court's decision on issues relating to a defendant's criminal history shall not be reviewable on appeal." (Emphasis added.)

ORS 138.222(4) provides:

"In any appeal, the appellate court may review a claim that:

"(a)  *The sentencing court failed to comply with requirements of law* in imposing or failing to impose a sentence; or

"(b)  The sentencing court erred in ranking the crime seriousness classification of the current crime or in determining the appropriate classification of a prior conviction *or juvenile adjudication* for criminal history purposes." (Emphasis added.)

Viewing those statutes in context, it is clear that, in making determinations about any disputed part of a defendant's criminal history pursuant to ORS 137.079(5), the sentencing court must determine whether the use of a prior juvenile adjudication would comply with the requirements of law, including constitutional requirements.

We hold that defendants' state constitutional challenge to the use of their juvenile adjudications in sentencing in these cases is authorized by ORS 137.079(5), that the sentencing courts had authority to hear defendants' challenge on the ground asserted, and that appellate courts have jurisdiction to review that challenge under ORS 138.222(4).

## ARTICLE I, SECTION 11, ANALYSIS

We turn to the merits of defendants' claim.[5] Defendants and the Court of Appeals dissenters have relied most

---

[5] We note here that defendants have based their entire argument on a single theory, *viz.*, that it is impermissible to consider *at all* their earlier juvenile court adjudications. Therefore, that is the only question that we consider. We do not consider or address issues that might be raised concerning, for example, any limitations that may exist on the *weight* that may be given to such adjudications, assuming that they may in fact be considered for some purpose.

heavily on *Baldasar v. Illinois*, 446 US 222, 11 S Ct 1585, 64 L Ed 2d 169 (1980) as persuasive authority for their proposed interpretation of Article I, section 11. However, that case was overruled by.*Nichols v. United States*, 511 US ___, 114 S Ct 1921, 128 L Ed 2d 745 (1994).

As summarized in *Nichols*:

"[I]n *Baldasar v. Illinois*, a majority of the Court held that a [constitutionally valid] prior uncounseled misdemeanor conviction * * * could nevertheless *not* be collaterally used to convert a second misdemeanor conviction into a felony under the applicable Illinois sentencing enhancement statute. The *per curiam* opinion in *Baldasar* provided no rationale for the result; instead, it referred to the 'reasons stated in the concurring.opinions.' " 128 L Ed 2d at 752.

The Court in *Nichols* then analyzed the conflicting concurrences in *Baldasar*, further noting that lower courts have had difficulty trying to apply *Baldasar* and, consequently, have regularly limited its application to its facts. In overruling *Baldasar*, the *Nichols* Court said:

"[A]n uncounseled conviction valid under *Scott* [*v. Illinois*, 440 US 367, 99 S Ct 1158, 59 L Ed 2d 383 (1979),] may be relied upon to enhance the sentence for a subsequent offense, even though that sentence entails imprisonment. Enhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes which are common in state criminal laws, do not change the penalty imposed for the earlier conviction." *Id.* at 754 (citations omitted).

Noting that sentencing courts have traditionally considered a wide variety of factors, including a defendant's past criminal behavior, the *Nichols* Court stated:

"Sentencing courts have not only taken into consideration a defendant's prior convictions, but have also considered a defendant's past criminal behavior, even if no conviction resulted from that behavior. We have upheld the constitutionality of considering such previous conduct in *Williams v. New York*, 337 US 241, 69 S Ct 1079, 93 L Ed 1337 (1949)." *Id.* at 754-55.

The *Nichols* Court concluded that prior uncounseled misdemeanor convictions could be used at a later sentencing hearing. *Id.* at 755.

The state argues that, because a juvenile has no right under Article I, section 11, to a jury trial, *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 575, 857 P2d 842 (1993), including consideration of juvenile adjudications in a guidelines criminal history score does not violate Article I, section 11.[6] We are not persuaded by defendants' argument, based on *Baldasar*, that, even if their juvenile adjudications are not invalid *per se*, later consideration of those adjudications for adult sentencing purposes creates a state constitutional infirmity. As *Reynolds* shows, there was no constitutional infirmity in defendants' juvenile adjudications. Defendants cite no persuasive authority for the proposition that a *constitutionally valid* juvenile adjudication is not relevant to and may not be used for later adult sentencing purposes. *City of Pendleton v. Standerfer*, 297 Or 725, 688 P2d 68 (1984), and *State v. Grenvik*, 291 Or 99, 628 P2d 1195 (1981), cited by defendants, are inapposite. Those cases involved questions regarding the use of constitutionally *invalid* convictions in later prosecutions.

Before the enactment of the sentencing guidelines, a sentencing judge was entitled to take into consideration a vast array of circumstances in trying to determine the appropriate sentence. The judge frequently considered adjudicated and unadjudicated wrongdoing, other scrapes with the law, and many other types of pertinent information in reaching the sentencing decision. The sentencing guidelines purport to narrow somewhat that range of considerations, but they do not narrow it entirely — they still permit the judge to consider an offender's prior scrapes with the law that have resulted in a formal adjudication by a juvenile court that the offender had committed an act which, had it been committed by an adult, would have been punishable as a felony. Defendants do not suggest that, before the adoption of the sentencing guidelines, it would have been impermissible for a sentencing judge to consider their juvenile adjudications, and they offer no persuasive reason why their use is not permissible now.

COLLATERAL CONSEQUENCES

Defendants also rely on *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d 52 (1977), for the proposition

---

[6] As noted, defendants were convicted after jury trials of the crimes for which they are being sentenced, and the validity of their convictions is not at issue here.

that juvenile adjudications are "criminal prosecutions" for purposes of Article I, section 11. Defendants ask this court to apply the test from *Brown* and to conclude that in this context their prior juvenile adjudications are "criminal prosecutions." We agree with the state's characterization of defendants' argument as a "thinly veiled attack on this court's recent holding in *Reynolds*." We decline defendants' invitation to retreat from our analysis and holding in *Reynolds*.[7]

There are any number of circumstances that may have collateral consequences in a later case without transforming the earlier circumstances into criminal prosecutions. In these cases, defendants are being punished for their present crimes only, as to which they each have received a jury trial in accordance with all constitutional requirements. We hold that using defendants' juvenile adjudications in calculating their criminal history scores under the sentencing guidelines did not violate the jury trial provision of Article I, section 11.

The decisions of the Court of Appeals are affirmed. The judgments of the circuit courts are affirmed.

**FADELEY, J.,** dissenting.

I agree with the majority that a sentencing judge may consider prior behavior of the convicted person, including behavior as a juvenile, before determining what sentence is appropriate. However, I agree with the dissent that a prior juvenile *adjudication*, entered without the constitutional safeguards required for criminal cases, may not be treated as the equivalent of an adult conviction. Thus, I think it is the law that prior behavior as a juvenile may be used in sentencing, but only as it represents an individual feature of an individual's past, not as if it were a prior criminal *conviction*.

There would be no necessary conflict between the majority and the dissent had the majority stopped with deciding "the only question" before us. A footnote in the majority opinion states:

---

[7] During oral argument in these cases, defendants argued that, in *Reynolds*, this court did not consider the precise issue presented in these cases, *viz.*, the "collateral consequences" of an adjudication for juvenile delinquency. Defendants are mistaken. In *Reynolds*, that issue was briefed, argued, and ultimately rejected by this court. *Reynolds*, 317 Or at 565 n 3.

"We note here that defendants have based their entire argument on a single theory, *viz.*, that it is impermissible to consider *at all* their earlier juvenile court adjudications. Therefore, that is the only question that we consider." 321 Or at 7 n 5 (emphasis in original).

With that "at all" point, and the bare bones of its resolution by the majority, I have no quarrel. However, the majority goes leagues further, across a stormy sea, to permit use of a juvenile adjudication as, in every respect, the equivalent of a criminal conviction. The juvenile court adjudication was not a criminal conviction. *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 857 P2d 842 (1993).

I cannot join in any implication that the law regarding the future effect of a jury-less adjudication permits that adjudication to be used as a criminal conviction. Nor can I join in the holding that all adjudicated juveniles are to be viewed forever as ex-convicts in the eyes of the law.

This dissent expresses my separate views, and I concur in the dissent of Unis, J.

**UNIS, J.,** dissenting.

The majority holds that "using defendants' juvenile adjudications in calculating their criminal history scores under the sentencing guidelines [does] not violate the jury trial provision of Article I, section 11," of the Oregon Constitution. 321 Or at 10. As the primary justification for its holding, the majority states:

"Before the enactment of the sentencing guidelines, a sentencing judge was entitled to take into consideration a vast array of circumstances in trying to determine the appropriate sentence. The judge frequently considered adjudicated and unadjudicated wrongdoing, other scrapes with the law, and many other types of pertinent information in reaching the sentencing decision. The sentencing guidelines purport to narrow somewhat that range of considerations, but they do not narrow it entirely — they still permit the judge to consider an offender's prior scrapes with the law that have resulted in a formal adjudication by a juvenile court that the offender had committed an act which, had it been committed by an adult, would have been punishable as a felony. Defendants do not suggest that, before the adoption of the sentencing guidelines, it would have been impermissible for a

sentencing judge to consider their juvenile adjudications, and they offer no persuasive reason why their use is not permissible now." 321 Or at 9.

I find that analysis flawed, incomplete, and unpersuasive. I would hold that, under this court's decision in *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 857 P2d 842 (1993), Article I, section 11, of the Oregon Constitution[1] prevents the use of nonjury juvenile adjudications[2] under the sentencing guidelines by a sentencing court to establish a longer sentence for an adult offender than the offender would have received in the absence of those adjudications. I respectfully dissent.

The Court of Appeals, in a 5-4 decision, upheld the use of juvenile adjudications under the sentencing guidelines in *State v. Stewart*, 123 Or App 147, 859 P2d 545 (1993), *adhered to as modified on reconsideration*, 126 Or App 456, 868 P2d 794 (1994). In *State v. Billings*, 124 Or App 682, 865 P2d 1340 (1993), a panel of the Court of Appeals affirmed defendant's sentence from the bench. This court allowed review and consolidated the cases of *Stewart* and *Billings*.

In *Stewart*, the majority of the Court of Appeals rejected defendant's Article I, section 11 argument, holding that "[a]n adjudication sufficient to commit a juvenile to a juvenile facility can later be used to enhance a sentence as an adult." *Stewart*, 123 Or App at 151. In essence, the majority of the Court of Appeals held that, because most due process guarantees are afforded a juvenile during the jurisdictional phase of a juvenile delinquency proceeding, the use of the juvenile adjudication later to enhance an adult offender's criminal sentence does not violate due process.

A dissenting opinion, which I find consistent with this court's decision in *Reynolds*, states:

"I agree that the kind of fully adversarial form of fact finding that a jury engages in would add little to, and may be

---

[1] Article I, section 11, of the Oregon Constitution provides in part: "In all criminal prosecutions, the accused shall have the right to public trial by an impartial jury in the county in which the offense shall have been committed."

[2] " 'Juvenile Adjudication' means formal adjudication or finding by a court that the juvenile has committed an act which, if committed by an adult, would be punishable as a felony." OAR 253-03-001(11).

incompatible with, a juvenile justice system whose purpose is to determine what kind of care, custody and control will best meet the needs of the child. I also agree that, for the purpose of making that kind of rehabilitative determination, a non-jury adjudication that an offender committed an act that would be criminal if committed by an adult is constitutionally valid.

"The fact that defendant's previous juvenile adjudications were constitutionally valid for certain purposes does not mean that they were 'valid for all purposes.' *Baldasar v. Illinois*, 446 US 222, 226, 100 S Ct 1585, 64 L Ed 2d 169 (1980) (Marshall, J., concurring). * * *

"* * * * *

"An adult criminal offender may be deprived of a liberty interest only after a trial that offers the full complement of constitutional safeguards, unless the offender has sentiently waived them. A sentence enhancement on the basis of a prior, lawful, adjudication that did not have the same safeguards is unconstitutional. The United States Supreme Court was right, and the majority here is wrong. Defendant's right to a jury under Article I, section 11, was violated by using the juvenile adjudications to imprison him." *Stewart*, 123 Or App at 155-56 (De Muniz, J., dissenting) (footnote omitted).

I agree with the dissent in the Court of Appeals that this court's opinion in *Reynolds* means that Article I, section 11, of the Oregon Constitution prevents the use of juvenile adjudications under the sentencing guidelines to establish a longer sentence for an adult offender than the offender would have received in the absence of those ajudications. In *Reynolds*, in determining whether a trial by jury was required by Article I, section 11, of the Oregon Constitution or the Sixth Amendment to the federal constitution during the jurisdictional phase of a juvenile delinquency proceeding,[3]

---

[3] "Juvenile court delinquency proceedings have two aspects: (a) the adjudicatory or jurisdictional phase, in which the court must decide whether the young person's conduct warrants juvenile court jurisdiction; and (b) the dispositional phase, in which the judge is faced with the task of what to do with a youth over whom jurisdiction has been established." Robert H. Mnookin and D. Kelly Weisberg, *Child, Family and State: Problems and Materials on Children and the Law* 1008 (2d ed 1989).

this court inquired into the history and purpose of the juvenile system in Oregon. The court concluded that "[f]rom 1907 to the present, juvenile justice in Oregon has been based *primarily on a 'rehabilitation' model, rather than on a 'due process' or 'crime control' model." Reynolds*, 317 Or at 567 (emphasis added). In *Reynolds*, this court said that the juvenile courts

> "rarely have been criticized for the severity of their dispositional judgments. Without exception, this court's cases support the conclusion that the Oregon juvenile justice system always has been focused on the rehabilitation of delinquent youth. Unlike many states that recently have shifted their focus from juvenile rehabilitation to juvenile accountability and punishment, Oregon has remained faithful to its original emphasis on the rehabilitation of delinquent youth.
>
> "\* \* \* \* \*
>
> "The clear and unequivocal message of Oregon's juvenile code is to notify and involve parents whenever possible and to focus on the family, to involve schools and appropriate social agencies as early as possible, to handle matters informally, and to approach each child's alleged delinquency as an equitable problem rather than a criminal problem. \* \* \*
>
> "\* \* \* \* \*
>
> "\* \* \* *In no way is the adult criminal justice system comparable to that [rehabilitation] model." Id.* at 568-74 (emphasis added) (footnotes and citations omitted).

Ultimately, this court concluded:

> "In summary, in the jurisdictional phase of a delinquency proceeding \* \* \*, *the issue is not whether the child should be punished for his or her conduct* but, rather, whether the statutory grounds for jurisdiction have been established and, if so, what disposition is in the child's best interests. *Juvenile courts are concerned with rehabilitation, not punishment. If the state wishes to prosecute a child criminally, it must do so by transferring the child to an adult criminal court.*
>
> "\* \* \* \* \*
>
> "We conclude that, in the juvenile code, the legislature so changed the way that a juvenile is treated as to create a proceeding that is *sui generis*. We hold that the jurisdictional phase of a juvenile proceeding under ORS 419.476(1)(a) is not a 'criminal prosecution' within the meaning of Article I, section 11, of the Oregon Constitution." *Id.* at 574-75 (emphasis added).

As is clear from the foregoing quotations, this court in *Reynolds* recognized the crucial difference between adult criminal courts and juvenile delinquency proceedings. Underlying this court's decision in *Reynolds* is the principle that the juvenile justice system has a greater need for experimentation and flexibility than adult criminal courts because juvenile courts are concerned with rehabilitation, not punishment. Accordingly, the decision in *Reynolds* implies that formal, adversarial proceedings are unnecessary and that informality in juvenile proceedings is permissible under Article I, section 11, because the focus of juvenile adjudications is on noncriminal, nonpunitive (rehabilitative) purposes.

In these consolidated cases, however, defendants are not faced with the type of rehabilitative, nonpunitive situation described in *Reynolds*. Rather, defendants are faced with incarceration in the adult criminal justice system, where effective rehabilitation and the best interests of the offender are not among the primary goals stated by the sentencing guidelines. OAR 253-02-001(1) provides that the primary objectives of the sentencing guidelines are "to *punish each offender appropriately*, and to insure the security of the people in person and property." (Emphasis added.)

The sentencing guidelines operate on a matrix system, which uses grid blocks to determine the presumptive sentence to be imposed. One side of the matrix is the "crime seriousness scale," based on the seriousness of the crime for which the person is being sentenced. OAR 253-04-001(1). The other side of the matrix is the "criminal history scale," which increases the penalty range based on the person's prior "criminal" record. *Id.* Each of the grid blocks formed by the intersection of a crime seriousness category and a criminal history category represents a presumptive sentence classification. OAR 253-04-001(2).

The grid block assigned to a defendant is used to establish a presumptive sentence under the guidelines. *See* ORS 137.669 ("[t]he guidelines * * * shall control the sentences for all crimes committed after the effective date of such guidelines. Except [for departure sentences for specific reasons], the incarcerative guidelines and other guidelines so designated by the board *shall be mandatory and constitute presumptive sentences*") (emphasis added). In all cases, the

sentencing judge must use the grid block to establish the presumptive sentence for the offender. OAR 253-04-001(2). The presumptive sentence in the guidelines is the sentence that should be imposed in the usual case. OAR 253-08-001. In cases of departure, the grid block is used to establish the maximum length of departure that a sentencing court may impose. OAR 253-08-004.

The sentencing guidelines combine nonjury juvenile adjudications with adult convictions to determine a person's *criminal history category*. The criminal history category, which is one of the two factors used to establish a presumptive sentence, is determined by examining *only* prior adult convictions and juvenile adjudications. *See* OAR 253-04-006(2) ("[a]n offender's criminal history is based upon the number of adult felony and Class A misdemeanor convictions and juvenile adjudications in the offender's criminal history at the time the current crime or crimes of conviction are sentenced"). Thus, nonjury juvenile adjudications of "person felonies" are treated identically to "adult person felonies" to determine a person's criminal history category. OAR 253-04-007 (describing calculation of criminal history categories). In addition, nonjury juvenile adjudications of nonperson felonies are given a specific value under the guidelines. *Id.*

In *Stewart*, the trial court used four juvenile adjudications to calculate defendant's criminal history category, which resulted in a longer sentence than he would have received in the absence of those adjudications. Without the juvenile adjudications, defendant's maximum presumptive sentence would have been 18 months. The use of juvenile adjudications to calculate defendant's criminal history category resulted in the imposition of a presumptive sentence of 22 months in prison and 36 months of post-prison supervision.

In *Billings*, the trial court used several nonperson felonies and a juvenile adjudication for sodomy to calculate defendant's criminal history category, which resulted in a longer sentence than he would have received in the absence of those adjudications. The trial court imposed a 34-month sentence for each of defendant's convictions. Without the

juvenile adjudication for sodomy, defendant's maximum presumptive sentence would have been 26 months under the sentencing guidelines.

Thus, in both *Stewart* and *Billings*, defendants were sentenced to periods of incarceration, parts of which were attributable to earlier nonjury juvenile adjudications. Incarceration in the penitentiary (or extended incarceration) attributable to nonjury juvenile adjudications does not comport with nonpunitive, rehabilitative consequences that this court envisioned in *Reynolds*. In each of these cases, the nonjury juvenile adjudication at issue had significant punitive consequences. Thus, the holding of the majority conflicts with the foundational underpinnings of this court's decision in *Reynolds*.

In fact, the majority does not address directly the rationale behind *Reynolds*. As quoted above, the majority's major argument is that, because judges historically have been able to consider offenders' "prior scrapes with the law," there is no reason why juvenile adjudications may not be considered under the sentencing guidelines. I disagree with that illogical leap. I agree that juvenile adjudications were one of the factors considered by the sentencing judge under an indeterminate sentencing regime. *See State v. Scott*, 237 Or 390, 399-400, 390 P2d 328 (1964) (setting forth considerations sentencing court may use under indeterminate sentencing scheme that preceded sentencing guidelines). That historical fact does not mean, however, that juvenile adjudications arrived at without a trial by jury may be used to enhance an adult offender's sentence under the sentencing guidelines.[4]

Unlike the historical method of indeterminate sentencing, under the sentencing guidelines, the trial court is not entitled to weigh the circumstances surrounding a particular nonjury juvenile adjudication or to disregard the adjudication

---

[4] In addition, the majority does not analyze whether the use of nonjury juvenile adjudications in (preguidelines) indeterminate sentencing was constitutional. It merely asserts that courts *did* consider that type of adjudication and that these defendants do not *argue* that it was impermissible for judges to consider such information before the sentencing guidelines. A constitutional holding should not be based on the premise that "it has always been that way" and that "the parties did not raise it." If the majority chooses to rely on historical practice, I believe that the majority should at least do an independent analysis as to whether the earlier practice on which it relies was constitutional.

altogether if the trial court believes it is appropriate. The sentencing judge must impose a presumptive sentence, calculated in part by considering juvenile adjudications, unless the judge has "substantial or compelling reasons to impose a departure." OAR 253-08-001. The sentencing guidelines contain a "nonexclusive" list of departure factors that does not include discretionary review of prior juvenile adjudications in mitigating a presumptive sentence. OAR 253-08-002(1). As a result, unlike the indeterminate sentencing regime, under the sentencing guidelines, juvenile adjudications have significant punitive consequences. The sentencing guidelines require trial courts to consider nonjury juvenile adjudications in a structured, nondiscretionary format. Through the use of juvenile adjudications in adult sentencing, those adjudications are used for "crime control" and "punitive" purposes rather than for the rehabilitative purposes touted in *Reynolds*.

In *Reynolds*, this court held that juries are not constitutionally required in juvenile delinquency proceedings because such proceedings are not criminal prosecutions. Although, under *Reynolds*, a child may be adjudicated without a jury for the purposes of juvenile, nonpunitive proceedings, the constitutionality of that adjudication dissipates when the adjudication is used indistinguishably with an adult criminal conviction to calculate an adult offender's criminal history category.[5]

---

[5] The dissent in the Court of Appeals argued that "[t]he fact that defendant's previous juvenile adjudications were constitutionally valid for certain purposes does not mean that they were 'valid for all purposes.' *Baldasar v. Illinois*, 446 US 222, 226, 100 S Ct 1585, 64 L Ed 2d 169 (1980) (Marshall, J., concurring)." *State v. Stewart*, 123 Or App 147, 155, 859 P2d 545 (1993) (De Muniz, J., dissenting), *adhered to as modified on reconsideration*, 126 Or App 456, 868 P2d 794 (1994).

The majority dismisses that argument by noting that the Supreme Court's opinion in *Baldasar* was overruled by *Nichols v. United States*, 522 US ____, 114 S Ct 1921, 128 L Ed 2d 745 (1994). 321 Or at 8. Although that is true, *Baldasar* was not offered as anything more than persuasive authority. *Baldasar* involved an uncounselled misdemeanor conviction that was valid at the time that it was imposed because no prison time was actually imposed: In a plurality opinion, the Supreme Court held that the uncounselled conviction was not valid to enhance a later sentence that did involve incarceration. *Baldasar*, 446 US at 221-22. That holding was overruled in *Nichols*.

The analogy is appropriate in this case, regardless of whether *Baldasar* was overruled. In my view, the majority must grapple with the merits of the argument rather than dismiss it simply because the Supreme Court of the United States ultimately rejected a similar argument. Just because a juvenile adjudication is valid

The juvenile justice system cannot be used as both a sword and a shield. Under *Reynolds*, because juvenile adjudications are designed to ascertain and protect the best interests of the child, the state is *shielded* from having to provide a trial by jury. I would not allow, as the majority does today, the state to turn around and use a juvenile adjudication obtained without a trial by jury as a sword to imprison a criminal defendant in an adult facility. As this court stated in *Reynolds*, if the state wishes to *punish* a juvenile offender, it must remand the child to adult court for a criminal prosecution that includes the right to a trial by jury. *Reynolds*, 317 Or at 574.

As the Supreme Court of the United States warned nearly thirty years ago:

"[T]here may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children." *Kent v. United States*, 383 US 541, 556, 86 S Ct 1045, 16 L Ed 2d 84 (1966).

The majority opinion creates the worst of both worlds for juveniles brought under the jurisdiction of juvenile courts in Oregon — a juvenile offender need not receive an adjudication by an impartial jury, yet that adjudication later may be used under the sentencing guidelines to establish a longer sentence in adult prison for an offender than that offender would have received in the absence of that adjudication. Moreover, the majority gives the state the best of both worlds — the state need not provide a trial by jury in a juvenile adjudication, yet it later may use that same adjudication to have an adverse effect on an adult offender's length of sentence.

Under *Reynolds*, Article I, section 11, of the Oregon Constitution does not require a trial by jury in the jurisdictional phase of a juvenile delinquency proceeding. However, I do not believe that a nonjury juvenile adjudication later may be used to establish a longer sentence in an adult prison for an offender than that offender would have received in the absence of that adjudication. Accordingly, I would reverse the decision of the Court of Appeals and the judgment of the

under Article I, section 11, of the Oregon Constitution for its consequences in the juvenile system does not make it valid for all purposes and at all times.

circuit court, vacate the sentences of each defendant, and remand the cases to the circuit court for resentencing.

I respectfully dissent.

Fadeley, J., joins in this dissenting opinion.