Argued and submitted May 30, affirmed September 26, 2007, petition for review denied February 13, 2008 (344 Or 110)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## MICHAEL ARLIE TRAVALINI,
*Defendant-Appellant.*

Josephine County Circuit Court
02CR0699, 03CR0865
A125604 (Control); A125605

168 P3d 1159

Tammy W. Sun, Deputy Public Defender, argued the cause for appellant. With her on the brief were Peter A.

Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Brendan C. Dunn, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

SCHUMAN, J.

## SCHUMAN, J.

Defendant was indicted for arson in the first degree for intentionally damaging the property of another. ORS 164.325(1)(a)(A). The indictment also alleged that the arson "represented a threat of serious physical injury," thereby exposing defendant to an enhanced sentence under an "offense-subcategory fact" set out in the sentencing guidelines but not the arson statute.[1] At the close of the state's case, defendant moved for a judgment of acquittal, arguing that the state had failed to prove that he intended to injure another; according to defendant, the state had to prove intent with respect not only to the elements in the statute itself, but also with respect to the subcategory fact stated in the indictment. The court denied the motion. Defendant was subsequently found guilty, sentenced, and ordered to pay $33,327.52 in restitution. On appeal, he assigns error to the court's denial of his motion for a judgment of acquittal and to the imposition of restitution. We affirm.[2]

The relevant facts are straightforward. On the night of November 7, 2003, defendant drove past his ex-girlfriend's house and saw, parked in front of it, a truck that he recognized as belonging to her new boyfriend. When defendant saw the truck, he "lost it" and "wanted revenge." He drove to the rental house where he knew the new boyfriend lived and, presuming that the boyfriend was not there, entered through an unlocked back door, planning to "trash his place." Once inside, defendant found some flares. He used two of them to set the house on fire. The resulting conflagration sent a dangerous amount of smoke and carbon monoxide into a small house approximately 14 feet from the back of the boyfriend's house and connected to it by a roof over a carport. At the time, nobody was in the boyfriend's house, but the second house

---

[1] One subparagraph of the arson statute, ORS 164.325(1)(a)(B), provides that a person commits arson in the first degree if the person intentionally damages "any property, * * * and such act recklessly places another person in danger of physical injury[.]" Defendant was not indicted under that subparagraph.

[2] Defendant was also convicted of burglary in the first degree, ORS 164.225, and possession of a precursor substance, ORS 475.969. He does not appeal those convictions.

was occupied. Although that occupant's property was damaged, she escaped without injury.

■    The statute under which defendant was convicted, ORS 164.325 (2003), *amended by* Or Laws 2005, ch 706, § 4,[3] provides:

> "(1)   A person commits the crime of arson in the first degree if:
>
> "(a)   By starting a fire or causing an explosion, the person *intentionally* damages:
>
> "(A)   Protected property of another[.]"

(Emphasis added.) First-degree arson is one of the offenses that has "been divided into different sub-categories for the Crime Seriousness Scale * * *. [E]ach sub-category includes a unique set of offense-specific characteristics that represents a different degree of crime seriousness for sentencing purposes." OAR 213-018-0000(1) (Nov 1, 1999). Four subcategories exist for first-degree arson. OAR 213-018-0015 (Nov 1, 1999). The most serious is described as follows:

> "(1)   **CRIME CATEGORY 10**: Arson I shall be ranked at Crime Category 10 if the commission of the offense represented a threat of serious physical injury."

*Id.* If the offense did not represent a threat of serious physical injury, it falls into one of the three remaining, less serious, subcategories, depending on the amount of damage caused by the fire. *Id.* Notably, none of the subcategories in OAR 213-018-0015 specifies a culpable mental state. Defendant's argument at trial and on appeal is that the mental state set out in the statute, "intentionally," carries over to the subcategory fact, and that, because the state did not prove that he intended to cause serious physical injury, he should have been acquitted.

Defendant's argument stems from the initial premise that the state must prove a culpable mental state "with respect to each material element of the offense that necessarily implies a culpable mental state." ORS 161.095(2). For

---

[3] All future references to ORS 164.325 are to the 2003 version of the statute, which does not differ in relevant respect from the current version.

statutes such as the first-degree arson statute that contain a specified mental state but do not "specify the element to which it applies, the prescribed culpable mental state applies to each material element of the offense that necessarily requires a culpable mental state." ORS 161.115(1). According to defendant, the subcategory fact under which defendant was indicted—that the act "represented a threat of serious physical injury"—defines a material element of his offense that necessarily requires a culpable mental state, so the intentionality specified in the statute applies to it.

Both this court and the Supreme Court have reasoned that a subcategory fact is not an "element" of the substantive offense to which it is related. In *State v. Ferrell*, 315 Or 213, 843 P2d 939 (1992), the defendants were indicted for, and convicted of, various offenses, each of which fell into a particular subcategory for sentencing purposes (their offenses were part of a "scheme or network"). The rule establishing the subcategory, then numbered OAR 253-04-002, App 4, was subsequently found to be unconstitutionally vague. *State v. Moeller*, 105 Or App 434, 806 P2d 130, *rev dismissed*, 312 Or 76, 815 P2d 701 (1991). The *Ferrell* defendants appealed, contending that their convictions had to be vacated and the indictments dismissed because the indictments, containing as they did an unconstitutionally vague element, were themselves unconstitutionally vague. *Ferrell*, 315 Or at 220. The court rejected that argument on the ground that the indictment was not vague with respect to the offense itself or any of its elements:

> "The only function of the 'scheme or network' allegation in each indictment was to move up the underlying drug offenses on the 'crime-seriousness' scale *for sentencing purposes*. Although the state is required to plead specially in the indictment any offense-subcategory fact on which it seeks to rely to enhance an offense for sentencing purposes, such an allegation is required *in addition to* allegations of the elements of the underlying offense. Thus, the absence of an offense-subcategory allegation as is found here in an indictment[,] or, similarly, a defect in such an allegation, does not affect the sufficiency of the remaining allegations in the indictment."

*Id.* at 221 (citation omitted; emphasis in original). Thus, the court distinguished between elements and "offense-subcategory fact[s]," with the necessary implication that the two categories are mutually exclusive.

In a case with facts similar to this one's, the defendant was indicted for burglary in the first degree. *State v. Stewart*, 123 Or App 147, 859 P2d 545 (1993), *adh'd to as modified on recons*, 126 Or App 456, 868 P2d 794 (1994), *aff'd on other grounds*, 321 Or 1, 892 P2d 1013 (1995). The indictment contained, as an offense-subcategory fact, the allegation that the dwelling was occupied. The defendant asked for an instruction informing the jury that, in order to convict, the state had to prove " 'each of the following elements,' " including " '[t]hat the Defendant, at the time of the entry or remaining, knew that the premises described in the charge was an occupied building.' " *Id.* at 149. The trial court refused, and we affirmed that decision. "We need not decide whether the state must prove that defendant knew that the building was occupied in order for the sentence to be enhanced. Defendant concedes that his proposed instruction treated the penalty enhancer as an element of the crime, which it is not." *Id.*

In *State v. Merrill*, 135 Or App 408, 411-12, 899 P2d 712 (1995), *rev dismissed as improvidently allowed*, 323 Or 73 (1996), we relied on *Ferrell* in holding that an indictment alleging one count of delivery of a controlled substance, but listing two offense-subcategory facts, did not violate the statutory requirement that each offense must be alleged in a separate count. We held that alleging "more than one ground for enhancing the *sentence* does not necessarily mean that the count alleges more than one *offense*." *Id.* (emphasis in original). We interpreted *Ferrell* to mean "that the subcategory factors required for sentencing purposes are not themselves elements of the underlying offense." *Id.* at 412.

Finally, *State v. Casavan*, 139 Or App 544, 912 P2d 946, *rev den*, 323 Or 265 (1996), involved facts similar to the ones in this case and in *Stewart*. The defendant was convicted of burglary in the first degree and his sentence was enhanced because the offense "was committed in an occupied dwelling." *Casavan*, 139 Or App at 546. Citing *Ferrell*, *Merrill*, and *Stewart*, we reaffirmed the conclusion that

offense-subcategory facts are not elements of an offense. *Id.* at 548.

Defendant, recognizing the difficulty that these cases pose to his theory, makes the following argument. In *Casavan*, he maintains, we tacitly accepted the defendant's argument that subcategory facts " 'function' as elements." *Id.* at 548. According to defendant, we then went on to hold that, although the "occupied dwelling" fact was a "functional element," it was not the *kind* of functional element for which the state had to prove a culpable mental state. Only functional elements that relate to the substance or quality of the forbidden act ("conduct" elements) require a culpable mental state; elements (such as whether a dwelling is occupied) that relate to "conditions existing outside of the actor's state of mind" ("condition" elements) do not. Defendant, then, reads *Casavan* as standing for the proposition that an offense-subcategory is the functional equivalent of an element, and that, like actual elements, offense-subcategory facts relating to the conduct of an offender require proof of a culpable mental state and offense-subcategory facts relating to surrounding circumstances do not.

Defendant does *not* proceed to argue that the offense-subcategory fact at issue in this case (whether the offense posed the threat of serious physical injury) is the type of functional element that, under *Casavan*, requires proof of a culpable mental state; defendant apparently recognizes that, like the question whether a building is occupied, the question whether an act threatens serious physical harm is, in the words of *Casavan*, "a circumstance that has nothing to do with an offender's state of mind." *Id.* at 549. Rather, defendant argues that the rule in *Casavan* for sorting elements into those that require proof of a culpable mental state and those that do not has been superseded by two recent cases, *State v. Schodrow*, 187 Or App 224, 66 P3d 547 (2003), and *State v. Rutley*, 202 Or App 639, 123 P3d 334 (2005), *rev allowed*, 342 Or 344 (2006). According to defendant, those cases stand for the proposition that, as we stated in *dicta* in *Rutley*, "[W]henever a statute includes knowledge as a culpable mental state generally, that same *mens rea* requirement applies to all of the statute's elements that describe either conduct or circumstances." *Id.* at 646.

We are not persuaded. First, we do not read *Casavan* as broadly as defendant does. Nowhere in that opinion did the court reject the earlier decisions holding that an offense-subcategory fact is not an element of an offense, nor did we explicitly accept the proposition that such facts are the functional equivalent of elements for purposes of proving a culpable mental state. We read the opinion as holding that offense-subcategory facts are not elements and that, even if they were to be treated as quasi-elements, they are not the kind that require a culpable mental state.

Further, even if we were to accept defendant's theory that *Casavan* stands for the proposition that offense-subcategory facts can function as elements, we nonetheless do not read *Schodrow* or *Rutley* to establish a rule that supersedes the "act-circumstance" distinction in *Casavan*. That distinction is an interpretation of ORS 161.095(2) and ORS 161.115(1) to (2), statutes that deal generally with culpable mental states; it is an attempt to give meaning to the tautological statement in those statutes that an element requires proof of a culpable mental state if it is an element "that necessarily requires a culpable mental state." *Schodrow*, on the other hand, explicitly eschews interpretation of those statutes, describing them as a "thicket," and instead focuses on the statutes defining the offense itself and the mental state at issue, "knowingly." 187 Or App at 229. It addresses narrow issues of statutory interpretation, in particular, the problem of how to interpret an ambiguous statute whose text specifies a mental state but does not specify to which of the elements in the statute it applies: " 'As a matter of grammar the statute is ambiguous; it is not at all clear how far down the sentence the word 'knowingly' is intended to travel.' " *Id.* at 230 (quoting Wayne R. LaFave and Austin W. Scott, Jr., *Criminal Law* § 27, 193 (hornbook series 1972)). To resolve the ambiguity, we took the definition of "knowingly" and "incorporated [it] into the statute" at issue, thereby making the ambiguity "disappear." *Schodrow*, 187 Or App at 230. Thus, *Schodrow* (and *Rutley*, which follows it) are relevant only to cases in which a *statute* itself contains an element to which an adverb describing a culpable mental state may or may not apply; the cases are not relevant here, where what is, *arguendo*, a quasi-element is not part of the statute itself.[4]

---

[4] *See* 215 Or App at 228 n 1.

In some cases, a culpable mental state can travel far down a statute, but no case or logic supports the idea that it can also travel into a completely separate, nonstatutory, text. In sum, we conclude that an offense-subcategory fact is not an element of an offense to which a culpable mental state must apply by virtue of ORS 161.095(2) or ORS 161.115(1), at least when the fact is not described in the statute itself.

■        Defendant also argues that, in imposing restitution without having submitted the facts underlying that imposition to a jury, the court ran afoul of the Sixth Amendment to the United States Constitution as construed in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). Defendant did not raise that argument at trial, and it is not plain error; indeed, it is not error at all. *State v. McMillan*, 199 Or App 398, 111 P3d 1136 (2005). We decline defendant's invitation to overrule *McMillan*.

Affirmed.